## J. G. ELMORE v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 17 February, 1926.)

**1. Actions—Torts—Contracts—Appeal and Error.**

Whether an action has been brought and tried on contract or tort, will be determined on appeal from the allegations of the complaint and the evidence introduced on the trial.

**2. Torts—Civil Liability—Contracts.**

A tort is an act or omission giving rise in virtue of the common law jurisdiction of the court to a civil remedy which is not an action of contract.

**3. Same—Actions.**

Where the master without assault, threat, force, trespass or slander discharges his employee under an imputation of dishonesty, ordinarily an action in tort cannot be maintained.

**4. Same—Railroads—Master and Servant—Employer and Employee— Evidence—Nonsuit.**

Where a railroad company through its superintendent discharges a conductor upon information and affidavits that he, in collusion with a local ticket agent, was selling tickets taken upon the train, without canceling them or turning them over to the company, and retaining the proceeds, and the superintendent acts in his office where he and the conductor were alone, and gives an appeal to the conductor, at his request and in conformity with the rules of the locomotive brotherhood, to the general manager of the road, who confirms the action of the superintendent; and no assault, trespass, threats, or violence or slander were used by the road's officials: *Held*, not an actionable tort.

**5. Same—Breach of Contract of Employment.**

The discharge of a servant by the master contrary to the terms of the contract of employment, is not alone sufficient to maintain an action in tort.

**6. Master and Servant—Employer and Employee—Discharge of Servant—Torts—Actions.**

The mere unlawful discharge of the servant by the master upon imputation of dishonesty, without force, etc., does not alone subject the latter to an action for damages in tort for trespass against the rights of the former.

**7. Same—Humiliation—Damages.**

Where a servant has brought his action in tort against the master for his wrongful discharge, which he cannot maintain, he may not recover damages for his humiliation after his discharge caused thereby.

APPEAL by defendant from *Devin, J.,* at March Term, 1925, of the Superior Court of HALIFAX County. Action for alleged wrongful discharge from service. Reversed.

Plaintiff alleged that for 28 years he had been in the defendant's service and on 2 October, 1923, was a conductor in charge of certain of its passenger trains operating between Norfolk & Goldsboro and between Norfolk and Rocky Mount; that at the date named the defendant falsely charged him with having taken up tickets of passengers and with having procured them, by collusion with the agent at Norfolk, to be resold as uncanceled tickets and with having divided with him the proceeds of the sales; and that these charges were false, wilful, and malicious. He alleged that while he was in charge of a train running between Goldsboro and Norfolk the defendant caused him to be discharged without warning or notice or an opportunity to be heard and in such way as to create the greatest possible notoriety; that he was 51 years old and unfitted for other work; and that he had been damaged in the sum of $200,000.

The defendant denied the material allegations of the complaint, and for a further defense alleged that the plaintiff had no personal contract of employment with the defendant but only by virtue of his membership in an organization known as the Order of Railroad Conductors; that he had not been employed for any definite time; that he had been charged with an infraction of the defendant's rules and, after his suspension, had requested and had been given a hearing in accordance with the rules of said order, first by the general superintendent, who permanently discharged him, and afterwards by the general manager, who approved and sustained the order of the superintendent; and that he then abandoned any other appeal. The defendant's motion to dismiss the action as in case of nonsuit was denied and the defendant excepted.

The following verdict was returned:

1. Did the defendant wrongfully discharge the plaintiff as alleged in the complaint? Answer: Yes.

2. If so, what compensatory damages, if any, is the plaintiff entitled to recover? Answer: $25,000.

3. What punitive damages, if any, is the plaintiff entitled to recover? Answer: ..... ...

Judgment for the plaintiff. Exceptions and appeal by defendant.

*Travis & Travis, Ashby Dunn and George C. Green for plaintiff.*

*Thomas W. Davis, V. E. Phelps, John H. Kerr and Spruill & Spruill for defendant.*

ADAMS, J. The substantial ground of the plaintiff's action is his discharge by the defendant under the false and malicious accusation that by collusion with the agent at Norfolk he had procured the resale of "unpunched tickets" and had misappropriated funds arising from the sale. That the suit is in tort and that any contractual relation between the parties is incidental was clearly stated in this instruction to the jury: "The plaintiff is not basing his action upon a breach of contract. He is not alleging damages for being discharged. He is claiming nothing against the defendant because he was separated and removed from his position of railroad conductor. . . . But he bases his action upon an alleged cause of action for damages for a wrong alleged to have been done him by the defendant in the manner and form in which his employment was terminated, that is, under false charges, and in such a way as to cause him great humiliation and mental suffering. That is the sole question presented to you under the first issue."

His Honor gave the additional instruction that as the contract had been made for an indefinite term either party had a right to sever the relation at will,—a familiar principle repeatedly approved. *Edwards v. R. R.,* 121 N. C., 490; *Richardson v. R. R.,* 126 N. C., 100; *Currier v. Lumber Co.,* 150 N. C., 694; *Warden v. Hinds,* 25 L. R. A. (N. S.), 529 and note; Lawson's Rights, Rem. & Pr., sec. 282. In the argument here it was suggested by the appellee that this instruction was incorrect because the Rules provide that "a conductor will not be discharged or suspended without cause." Assuming, certainly without deciding, that the appellee's position is correct, a breach of the provision would be *ex contractu,* while the plaintiff's grievance as stated in the complaint is *ex delicto.* The dismissal was wrongful, it is contended, because the charges preferred were not true.

In treating the motion for nonsuit we must keep in mind, not only the allegations in the complaint, but the plaintiff's recital of the circumstances under which his discharge was brought about. W. H. Newell, whose office was in Rocky Mount, was the defendant's general superin-

tendent; F. W. Brown was its general manager, with headquarters at Wilmington. The plaintiff testified: "At the time I was discharged I was running between Goldsboro and Norfolk. I was coming from Goldsboro to Norfolk, and I got a message to report at Mr. Darrow's office at 9:30 a. m. and that I would be relieved of my train at Rocky Mount. This was on 2 October, 1923. I reported at Mr. Darrow's office and was told that Mr. Newell would handle the case. I then went to Mr. Newell's office and he said: "Here are some charges." He first said: "I can stand irregularities, I can stand drunkenness, but I cannot and will not tolerate dishonesty." We were then in the general superintendent's office. He had reference to the batch of affidavits which he then began to read to me. I asked him who were these people who made these statements and he answered that they were passengers on my train. I asked him to give me the names of the men who had made these affidavits and he made no answer to me. He asked me if these were true statements, and I told him that he knew that they were not true. . . . He gave me to understand that I was fired and I have been since then. . . . The charges he read against me were that tickets had been turned in by other conductors which were sold specifically for my train; these tickets, they claimed, were bought by people leaving Norfolk and surrendered to me, and in several instances these same tickets were sold again and turned in by other conductors with their punch marks and their reports. I refer to the charges in the affidavits; these charges were that tickets had been bought for my train and that they were turned in later, some on my train and some on others. He accounted for the fact that some of these tickets had been taken back and resold by saying that I had taken them back to agent Starke and he had resold them. . . . I was taken off the train at Rocky Mount that day and had to wear my uniform to my home in Norfolk. . . . I had no extra clothes with me. The fact that I had to go home in my uniform as a passenger on the train I was supposed to be conductor on naturally attracted the attention of the passengers and the public, and I was asked, not only by passengers, but by other conductors what I was doing riding in my uniform. Everybody wanted to know and of course I had to tell them. . . . It was very humiliating to be continually asked these questions. I was very humiliated and hurt in every respect."

The conversation between the plaintiff and the superintendent took place in the latter's office; no one else was present; no other heard what was said. Afterwards the plaintiff called for an investigation under the rules of the company, and, in his own words, "Mr. Newell still held out that I was fired"; and the former decision was not changed. Another hearing was had before the general manager in

Wilmington and the first decision was again approved. No other appeal was prosecuted; and in explanation of his suit, the plaintiff testified: "The one reason I am suing is that I had to travel back home in my uniform and the other is that I was wrongfully discharged."

The plaintiff's narration contains a fair statement of the theory upon which the action was prosecuted and proposes the vital question whether the complaint and the evidence have laid an adequate foundation for a suit in tort.

Actions *ex delicto* form an individual branch of the law. They have been classified fundamentally as breaches of duty by wrongful means, as fraud; culpable accident, as negligence; malice, illegal acts, etc. Bigelow on Torts (8 ed.), 35; Jaggard on Torts, sec. 141 *et seq.* They are divided by Pollock into three groups: (1) Personal wrongs which affect (a) the safety and freedom of the person; (b) personal relations in the family; (c) reputation; and (d) those which affect one's estate generally, as slander of title or malicious prosecution. (2) Wrongs to possession and property. (3) Wrongs to person, estate, and property, such, for example, as nuisance, or negligence. Pollock on Torts (12 ed.), 6.

It is apparent that the present suit cannot be placed in either of the last two groups; we must therefore determine whether it falls within the first.

A tort is an act or omission giving rise, in virtue of the common-law jurisdiction of the court, to a civil remedy which is not an action of contract. Pol. (1 ed.), 4. Jaggard says that this definition, while a negative one, seems to be least unsuccessful and unsatisfactory. "It is evident," he remarks, "that there are two main ideas set forth by this definition: the conduct which constitutes a tort and the redress which the law provides for the wrong done,—the cause of action and the remedy. . . . A tort or a wrong may be spoken of either as a breach or violation of a duty or an infringement of a right." 1 Jaggard on Torts, 2.

Inquiring then, whether the plaintiff has shown an infringement of his rights or the defendant's breach of a duty actionable in tort, we recur to Pollock. With respect not so much to the effect as to the nature of the act or omission he says: "In Group A (the first group), generally speaking, the wrong is wilful or wanton. Either the act is intended to do harm, or being an act evidently likely to cause harm, it is done with reckless indifference to what may befall by reason of it. Either there is deliberate injury, or there is something like the self-seeking indulgence of passion." Torts (12 ed.), 8.

The word "trespass" is sometimes used in a broad sense as synonymous with "tort"; but trespass in a restricted sense is treated as a

separate tort—technically under the second group as an actionable wrong to goods or land. It implies force. Also, in the sense of a trespass to the person, if considered under the first group, the word involves the idea of force or the direct character of an injury, remediable at common law by the action of trespass *vi et armis,* and not the idea of injuries which are consequential, resulting, for instance, from negligence or nonfeasance, and remediable by the old action of trespass on the case. 3 Bl., 120 *et seq.;* 26 R. C. L., 930 *et seq.*

With these principles in mind, we have failed to discover anything in the evidence to indicate or connote the defendant's wrongful application of force to the person or property of the plaintiff, or, indeed, the display or suggestion of any kind of force. There was no threat, no restraint, no intimidation, no element of an assault, and of course no battery. When the charges were preferred and the employment was brought to an end, the plaintiff and the superintendent were alone: there was no slander because there was no publication. (We may say incidentally that for slanderous words spoken by another employee of the defendant in relation to the charges set forth in the affidavits exhibited by Newell, the plaintiff has recovered damages in a former action in the sum of ten thousand dollars. *Elmore v. R. R.,* 189 N. C., 658.) So it is argued, not without reason, that neither Newell's statement to the plaintiff of the cause for which he was discharged, even if false, nor the discharge for the cause assigned constitutes an actionable civil injury, and that in the absence of evidence tending to show defamation or assault or trespass to person or property, the action cannot be maintained.

The plaintiff devotes elaborate argument to two propositions which in our opinion cannot avail him on the present record. It is an actionable wrong, he first contends, to procure the breach of an existing contract of employment. Granted that this doctrine applies to the wrongful interference by a stranger with the relation of master and servant, how is it pertinent in the case before us? The railroad company, the employer, is the only defendant. Those who made the affidavits, according to the plaintiff's testimony, "all worked for the Coast Line." So, in like manner with the superintendent, they represented the company; and it is difficult to perceive how the company under the allegations in the complaint tortiously procured or induced itself to interfere with the relation existing between itself and the plaintiff. We need not discuss the next proposition which is addressed to the plaintiff's inability to find other work and to the doctrine of interference with another's trade or calling, for a cursory reading of the record will show that these subjects are unrelated to questions presented for decision. But there is a third proposition. The plaintiff says in substance that his dismissal under

false charges, with its consequent humiliation and mental suffering, is itself an actionable wrong. To avoid confusion just here we must note the distinction between diverse principles which are frequently applied in suits growing out of the master's wrongful discharge of his servant. We have said that a contract of employment for an indefinite term may be terminated at the will of either party. But when the contract is for a definite term it cannot be terminated at an earlier period unless the right to end it is reserved in the contract, or unless there is a general custom authorizing an earlier termination. When the servant is employed for a definite time and the master without justification severs the employment at an earlier period, the discharge is wrongful in the terminology of the law of contracts; but it is not a tort. If the parties agree that the master may put an end to the contract if the services are not satisfactory, and, though they are satisfactory, the master feigns dissatisfaction and dismisses the servant, the discharge in a contractual sense may be wrongful; but is it ground of an action *ex delicto?* Take another case. A servant is employed for a definite period; his compensation is to include the use of a house and garden belonging to the master; he is discharged in breach of the contract and notified to vacate the premises; he refuses to remove and is forcibly evicted; thereupon he brings suit, the gravamen being the master's wrongful eviction of his servant by force. An action in tort may be maintained on the ground of the master's unlawful act *vi et armis.* These illustrations serve to draw the distinction between a wrongful discharge in tort, attended by actual or constructive force, and a wrongful discharge without force in breach of contract. See, in connection, *Wilson v. Wilderness Farm,* 82 At. 9 (N. J.), 517; *Beissel v. Elevator Co.,* 12 L. R. A. (N. S.) (Minn.), 403; *Mackenzie v. Minis,* 23 L. R. A. (N. S.) (Ga.), 1033; *Schmand v. Jandorf,* 44 L. R. A. (N. S.) (Mich.), 680; *American Stores v. Kussel,* 64 L. R. A. (1916 F), 882.

We understand the underlying principle to be that the mere discharge of a servant under an imputation of dishonesty will not support an action in tort. It is thus stated by *Stephen, J.,* in *Walton v. Tucker,* 45 J. P. (Exch. Div.), 23, which is cited in 1 Labatt's Master & Servant, 1166: "It seems to me that, if we gave way to the argument of the plaintiff, it would introduce an extensive and undesirable change in the law. There are few actions more frequently brought than actions for wrongful dismissal, and it must have happened upon many occasions that the dismissal must have been considered as grievous to a servant, not so much from the monetary loss as from the slur cast upon his character. No case, however, binding upon this Court has been produced, where such injuries as are now sought to be compensated have been so compensated. I think, therefore, that no such damages

can be given, and it seems to me right that it should be so, because if any further damage is due, that further damage must be caused by something which is in itself an actionable wrong. For instance, if the plaintiff had been expelled by violence, a count for assault might have been added; or if he had been abused, or the cause of dismissal had been stated needlessly, so as not to have been within the privilege, an action for slander or malignment would lie. As in this case the plaintiff was neither assaulted nor slandered, he ought not to recover more than the actual result of the breach of contract." *Comerford v. Street Ry.,* 164 Mass., 13, was an action for slander, the fifth count alleging that the defendant wantonly and recklessly dismissed and discharged the plaintiff from its employ and falsely and publicly charged him with being dishonest therein. The Court said: "If it (the fifth count) be construed as a count for discharging the plaintiff from its employ under such circumstances as to impute to him a charge of dishonesty, the count must fail. An action of tort does not lie against an employer for discharging a servant."

A wrongful discharge from employment becomes the basis of an action in tort when accompanied by a wrongful act which amounts to a technical trespass with actual òr constructive force. A malicious motive disconnected with the infringement of a legal right (even if there were evidence in this case to disclose it) cannot be the subject of a civil action. *Richardson v. R. R., supra; S. v. Van Pelt,* 136 N. C., 634, 660; *Bell v. Danzer,* 187 N. C., 224.

As we have said, the plaintiff has shown no assault, no slander, no force, no trespass to his person or property; indeed, no act, which disjoined from the mere termination of the employment constitutes an independent cause of action; and in our opinion the present suit cannot be maintained. An employer should not be subjected to the jeopardy of a suit for damages for the bare reason that in dismissing an employee he assigns the true ground of the discharge, although the reason given may be equivalent to an imputation of dishonesty.

But the plaintiff says that he had to return to Norfolk in the uniform of a Conductor; that in response to questions he had to give the reason; that he was humiliated; and the redress of this wrong he assigns as one object of his suit. That this circumstance is not an independent cause of action needs no argument. That it is not an element of damages is equally obvious. The discharge in the office ended the employment; no part of the contract authorized the plaintiff to designate time or place. When the contractual relation was broken the company was no more responsible for the plaintiff's garb than for the disclosure he made to inquiring friends. Under these conditions the law imposes

upon the defendant no liability for the remote and collateral consequences resulting from inferences or deductions that may have been drawn by the public from the situation of the plaintiff. *Berlin v. P. L. Cusachs, Ltd.,* 114 La., 743, 759. .

We are of opinion the defendant's motion for nonsuit should have been allowed. The judgment is therefore

Reversed.