PHYLLIS WAGONER v. ELKIN CITY SCHOOLS' BOARD OF EDUCATION, BRUCE MORTON, DONALD T. LASSITER, AND CHARLIE PARSONS

No. 9317SC241

(Filed 15 February 1994)

1. **Discovery and Depositions § 7 (NCI4th) — wrongful discharge of teacher alleged — discovery request for personnel and student records — failure to show relevancy and necessity — request properly denied**

    The trial court did not err in denying plaintiff's motion to compel discovery in her action for intentional infliction of emotional distress, constructive wrongful discharge, malicious interference with contract, and punitive damages, since plaintiff failed to meet her burden of proving that her requests for information as to whether the teacher who replaced her

had had a relationship with a high school student during his previous employment, the complete student records at her school, and school personnel records related to information both relevant and necessary to her claims.

**Am Jur 2d, Depositions and Discovery §§ 21 et seq.**

2. **Evidence and Witnesses § 2152 (NCI4th)— expert witness— affidavit consisting of legal conclusions**

The trial court did not err in sustaining defendants' objection to an expert witness's affidavit where the entire affidavit consisted of legal conclusions.

**Am Jur 2d, Expert and Opinion Evidence §§ 136 et seq.**

3. **Intentional Infliction of Mental Distress § 2 (NCI4th)— intentional infliction of emotional distress—principal's treatment of teacher—summary judgment for defendants proper**

The trial court did not err in granting defendants' motion for summary judgment on plaintiff's claim for intentional infliction of emotional distress, since evidence that defendants told plaintiff to throw away her health and physical education materials because she would never need them again, removed her from her health and physical education teaching position to the job of ISS coordinator, placed her away from other faculty members in a small room with great humidity and high temperatures, returned a student who had pushed plaintiff to her classroom, stared for "minutes at a time" at plaintiff while she taught, assigned her after school and Saturday work hours, asked her to accompany students on a skiing trip for a good evaluation, told her she had the worst job in school, and denied her the opportunity to attend workshops in her area may well have insulted plaintiff or caused her to suffer indignities, but such actions did not amount to conduct which was atrocious and utterly intolerable in a civilized community.

**Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 4 et seq., 17.**

**Liability of employer, supervisor, or manager for intentionally or recklessly causing employee emotional distress. 52 ALR4th 853.**

WAGONER v. ELKIN CITY SCHOOLS' BD. OF EDUCATION

[113 N.C. App. 579 (1994)]

4. **Contracts § 180 (NCI4th)— malicious interference—action by teacher against board and superintendent—parties to contract**

Plaintiff teacher could not maintain an action against defendant board of education or defendant superintendent of schools for malicious interference with contract since the board and the superintendent were parties to the contract.

**Am Jur 2d, Interference §§ 39-48.**

5. **Contracts § 190 (NCI4th)— malicious interference—motive of principals proper—failure of plaintiff to make prima facie case**

Because plaintiff teacher admitted on the face of her complaint that defendant principals, by virtue of their positions at her school, had a proper motive for their actions of placing plaintiff in the position of ISS coordinator, plaintiff failed to show that she could make out a *prima facie* case of malicious interference with contract.

**Am Jur 2d, Interference §§ 49-48.**

6. **Labor and Employment § 68 (NCI4th)— career teacher—no employee at will—tort of wrongful discharge inapplicable**

Plaintiff teacher's claim based on the tort of wrongful discharge was correctly dismissed by the trial court, since that tort arises only in the context of employees at will, and plaintiff, as a career teacher under N.C.G.S. § 115C-325(c), was not an employee at will.

**Am Jur 2d, Master and Servant §§ 60-70.**

Appeal by plaintiff from judgment entered 30 June 1992 in Surry County Superior Court by Judge James M. Long. Heard in the Court of Appeals 6 January 1994.

*Kennedy, Kennedy, Kennedy & Kennedy, by Harold L. Kennedy, III and Harvey L. Kennedy, for plaintiff-appellant.*

*Tharrington, Smith & Hargrove, by Ann L. Majestic, Alexis C. Pearce, and Jaye P. Meyer, for defendant-appellees.*

GREENE, Judge.

Phyllis Wagoner (plaintiff) appeals from the trial court's granting of Elkin City Schools' Board of Education, Bruce Morton, Donald T. Lassiter, and Charlie Parsons' (defendants) motion for summary

judgment in this action for intentional infliction of emotional distress, constructive wrongful discharge, malicious interference with contract, and punitive damages. Plaintiff also appeals from the trial court's order denying her motion to compel discovery and from the trial court's sustaining of defendants' objection to the affidavit of Dr. Melvin F. Gadson (Dr. Gadson).

The evidence, viewed in the light most favorable to plaintiff, reveals that the Elkin City Schools' Board of Education (the Board) hired plaintiff in 1974, and David Thrift, then principal of Elkin High School (EHS), informed her she was being hired to teach health and physical education, the only areas she was certified to teach. The probationary contract between the Board and plaintiff for the 1976-1977 school year and the career contract between the Board and plaintiff for the 1977-1978 school year state plaintiff is "[t]entatively assigned to Elkin High School." Plaintiff signed no other employment contract after signing the 1977 career contract. In 1974, plaintiff began teaching physical education and health.

In August 1985, Bruce Morton (Morton), EHS principal from the fall of 1985 until the summer of 1990, asked in front of the entire faculty, "Which one of you is Phyllis Wagoner?" and did not ask for anyone else. Morton visited the gym while she was teaching and stared at her for "minutes at a time," did not show up for scheduled evaluations of plaintiff, told her once "if I were grading you today, I would give you an F," switched her from a physical education teacher to an ISS coordinator, told her she could "throw all of [her] health and physical education materials away because [she] would never need them again," placed her office in a small room in the girls' locker room with a temperature of 90 to 100 degrees without providing a phone in that room, denied her the opportunity to attend workshops in her area, assigned different working hours than the other teachers, told her that her job was the worst job in the school, told her she would receive a good evaluation if she went on a school skiing trip, filled out an evaluation without a formal observation and claimed that plaintiff had agreed to an interview type observation when she had not, and returned a student that had pushed plaintiff to her classroom.

Plaintiff complained to the Board and Donald Lassiter (Lassiter), superintendent of Elkin City Schools, about her position and working hours as ISS coordinator; however, Lassiter and the Board upheld Morton's assignment of duties and the hours under the

Senate Bill 2 plan. After she informed the Board and the new principal, Charlie Parsons (Parsons), that she would work the regular hours, Lassiter suspended plaintiff without pay pending termination for alleged insubordination. After plaintiff appealed this suspension to a Professional Review Committee under N.C. Gen. Stat. § 115C-325, which determined on 23 October 1990 that plaintiff was wrongfully suspended, Lassiter reinstated her. After returning to EHS in November 1990, Parsons placed plaintiff back in the ISS program. On 30 November 1990, she resigned, citing that her work environment from 1989 through November 1990 was intolerable and unbearable, and she had been given "nothing to do" since her return. As a result of these events, plaintiff has suffered severe emotional distress, has been on medication for depression and anxiety, and has been diagnosed by her psychiatrist as having a major psychiatric disorder.

During discovery, plaintiff deposed Tony Duncan (Duncan), the teacher who was placed in plaintiff's position of physical education and health teacher, on 20 February 1992, but Duncan refused to answer questions regarding his relationship with a female high school student at his place of employment before coming to EHS. In written discovery, plaintiff sought personnel records of nine EHS teachers and certain student records. Plaintiff moved to compel discovery of such information on 28 February 1992, which motion was denied by the trial court on 2 April 1992.

Sam Tesh, Assistant Principal at EHS from 1983-87, James W. Halsey, Director of Personnel for the Board from 1985-87, Ralph Clingerman, a teacher at EHS, and Laura C. Overbey stated that Morton had told them he was under pressure from the Board to get rid of plaintiff. Morton stated that as principal of EHS, he had the responsibility of making teaching assignments and evaluating each teacher, and switched Duncan and plaintiff because he became "concerned that she was not doing an effective job of teaching the basic skills of various sports to the students" and because switching the responsibilities between Mr. Duncan and [plaintiff] would improve the overall school program."

Plaintiff tendered into evidence at the summary judgment hearing, the affidavit of Dr. Gadson. He stated in his affidavit that in his opinion, (1) defendants' treatment of plaintiff was an "extreme departure from the normal operation of a public school program," and that she was forced to work under "extreme and outrageous"

conditions; (2) replacing plaintiff with Duncan was a "wrongful in-
terference with her contract because it was motivated not by a
legitimate educational purpose, but was rather due to a malicious
and calculated design to drive her out of the Elkin school system";
(3) because defendants' conduct was "so far outside the bounds
of human decency and normal standards for the operations of a
public school," plaintiff would have been expected to resign; and
(4) defendants violated North Carolina's public policy by placing
Duncan in plaintiff's position because they knew of his immoral
conduct. After defendants objected to the trial court's consideration
of Dr. Gadson's affidavit on the grounds that the affidavit "pur-
ported to offer expert opinions regarding issues of law," the trial
court sustained the objection and ruled those portions offering
opinion testimony inadmissible. Defendants then objected to the
affidavit on the grounds that Dr. Gadson was not qualified to be
an expert in the subject areas in which his affidavit purports to
offer expert opinions. The trial court sustained the objection and
ruled the affidavit inadmissible.

Based on the evidence presented at the summary judgment
hearing, the trial court, on 30 June 1992, granted defendants' mo-
tion for summary judgment as to each of plaintiff's claims and
dismissed her action.

---

The issues presented are whether the trial court erred in
(I) denying plaintiff's motion to compel discovery; (II) sustaining
defendants' objection to consideration of Dr. Gadson's affidavit;
and (III) granting defendants' summary judgment motion on plain-
tiff's claims for intentional infliction of emotional distress, malicious
interference with contract, constructive wrongful discharge, and
punitive damages.

I

[1] Plaintiff argues that the trial court erred in denying her mo-
tion to compel discovery. Plaintiff wished to retake Duncan's deposi-
tion for the "purpose of having him answer questions about those
matters which he failed to do" in his deposition on 20 February
1992. Those matters concern the alleged involvement between
Duncan and a female student at the high school where Duncan
was employed before accepting employment at EHS. Plaintiff also
wished, under her Second Request for Production of Documents,
for defendants to supply plaintiff "the complete student record,

including report cards, discipline records, etc." of all students in the ISS program and EHS during 1989-90 and 1990-91 school years.

Under the rules governing discovery, a party may obtain discovery concerning any unprivileged matter as long as relevant to the pending action and reasonably calculated to lead to the discovery of admissible evidence. N.C.G.S. § 1A-1, Rule 26(b) (1990). If defendant fails to respond or specifically object to a request within forty-five days, or such other time the court states otherwise, Rule 34, the serving party, upon reasonable notice, may move to compel discovery under N.C. Gen. Stat. § 1A-1, Rule 37(a) (1990). Whether or not the party's motion to compel discovery should be granted or denied is within the trial court's sound discretion and will not be reversed absent an abuse of discretion. *In re Estate of Tucci*, 104 N.C. App. 142, 152, 408 S.E.2d 859, 865-66 (1991), *disc. rev. improvidently allowed*, 331 N.C. 749, 417 S.E.2d 236 (1992).

Plaintiff has failed to meet her burden of proving that her requests relate to information both relevant and necessary to her claims. Whether or not Duncan had a relationship with a high school student during his previous employment, the complete student records at EHS, and school personnel records are irrelevant to whether defendants intentionally inflicted emotional distress on plaintiff, constructively and wrongfully discharged her, or maliciously interfered with her contract. The trial court did not therefore abuse its discretion in denying her motion to compel discovery.

## II

[2] Plaintiff argues that the trial court erred in sustaining defendants' objection to Dr. Gadson's affidavit. We disagree. Whether a witness is competent to testify as an expert is within the sound discretion of the trial judge. *State ex rel. Utilities Comm'n v. General Telephone Co.*, 281 N.C. 318, 373, 189 S.E.2d 705, 740 (1972). Furthermore, expert testimony which suggests whether legal conclusions should be drawn or whether legal standards are satisfied is inadmissible. *See Hajmm Co. v. House of Raeford Farms*, 328 N.C. 578, 587, 403 S.E.2d 483, 489 (1991). In this case, Dr. Gadson's entire affidavit consists of legal conclusions; therefore, the trial court did not err in sustaining defendants' objection to Dr. Gadson's affidavit.

III

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

[3]  In an action for intentional infliction of emotional distress, the essential elements are "1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional distress." *Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992) (quoting *Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981)). Whether or not conduct constitutes extreme and outrageous behavior is initially a question of law for the court. *Briggs v. Rosenthal*, 73 N.C. App. 672, 676, 327 S.E.2d 308, 311, *cert. denied*, 314 N.C. 114, 332 S.E.2d 479 (1985). To meet the essential element of extreme and outrageous conduct, the conduct must go beyond all possible bounds of decency, and "be regarded as atrocious, and utterly intolerable in a civilized community. The liability clearly does not extend to mere insults, indignities, threats, . . . ." *Daniel v. Carolina Sunrock Corp.*, 110 N.C. App. 376, 383, 430 S.E.2d 306, 310, *rev'd in part*, 335 N.C. 233, 436 S.E.2d 835 (1993).

Viewing the evidence in the light most favorable to plaintiff, *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 63, 414 S.E.2d 339, 342 (1992) (all inferences drawn in favor of non-movant in deciding motion for summary judgment), defendants' conduct of telling her to throw away her health and physical education materials because she would never need them again, removing her from her health and physical education teaching position to the job of ISS coordinator, placing her away from other faculty members in a small room with great humidity and high temperatures, returning a student that pushed plaintiff to her classroom, staring for "minutes at a time" at plaintiff while she taught, assigning her after school and Saturday work hours, asking her to accompany students on a skiing trip for a good evaluation, telling her she had the worst job in school, denying her the opportunity to attend workshops in her area, and asking "[w]hich one of you is Phyllis Wagoner" in front of the entire faculty may very well have "insulted" plaintiff or caused her to suffer "indignities"; however, we do not regard this conduct "as atrocious, and utterly intolerable in a civilized community." Even assuming that removing plaintiff from her teaching position and placing her in the job of ISS coordinator was not allowed under her contract with the Board or under N.C. Gen. Stat. § 115C, an issue we need not decide, her

removal and placement in the ISS position does not constitute extreme and outrageous conduct. Therefore, because plaintiff cannot forecast evidence of extreme and outrageous conduct, the trial court did not err in granting defendants' motion for summary judgment as to that cause of action. *Roumillat*, 331 N.C. at 63, 414 S.E.2d at 342 (once summary judgment movant meets burden, burden is on non-movant to show she can make out prima facie case at trial).

### MALICIOUS INTERFERENCE WITH CONTRACT

**[4]** There are five essential elements for an action for malicious interference with contract: (1) a valid contract existed between plaintiff and a third person, (2) defendant knew of such contract, (3) defendant intentionally induced the third person not to perform his or her contract with plaintiff, (4) defendant had no justification for his or her actions, and (5) plaintiff suffered damage as a result. *McLaughlin v. Barclays American Corp.*, 95 N.C. App. 301, 308, 382 S.E.2d 836, 841, *cert. denied*, 325 N.C. 546, 385 S.E.2d 498 (1989); *Uzzell v. Integon Life Ins. Corp.*, 78 N.C. App. 458, 463, 337 S.E.2d 639, 643 (1985), *cert. denied*, 317 N.C. 341, 346 S.E.2d 149 (1986). We initially note that plaintiff cannot maintain an action against the Board or Lassiter for malicious interference of contract because the Board and Lassiter, as superintendent of the Board, are parties to the contract. *See Smith v. Ford Motor Co.*, 289 N.C. 71, 87, 221 S.E.2d 282, 292 (1976); *Elmore v. Atlantic Coast Line R.R. Co.*, 191 N.C. 182, 187, 131 S.E. 633, 636 (1926). Therefore, the trial court did not err in granting summary judgment for the Board or Lassiter on plaintiff's claim for malicious interference of contract.

**[5]** Because Morton and Parsons are not parties to the contract between plaintiff and the Board, they may be liable for malicious interference with the contract if they have in fact interfered with the contract and the interference has no relation whatever "to that legitimate business interest which is the source of the defendant's non-outsider status." *Smith*, 289 N.C. at 87, 221 S.E.2d at 292. Therefore, if the actions of Morton and Parsons have a basis related to their legitimate business interest in the contract between plaintiff and the Board, even though there may have also been some reasons for their actions unrelated to their legitimate business interest, plaintiff's action for malicious interference with contract cannot be sustained. Plaintiff, in her complaint, admits that Morton

and Parsons had an interest in her performance at EHS under her contract with the Board by alleging that Morton "was an agent, servant, employee and Principal of Defendant Board" and that Parsons "was and is an agent, servant, employee and Principal of Defendant Board." In their roles as principals at EHS, Morton and Parsons had a legitimate business interest in plaintiff's performance under her contract with the Board because they were responsible for overseeing, observing, and evaluating the faculty at EHS, and for assigning duties to the teachers. Because plaintiff admits on the face of her complaint that Morton and Parsons, by virtue of their positions as principals of EHS, had a proper motive for their actions of placing plaintiff in the position of ISS coordinator, plaintiff has failed to show that she can make out a prima facie case of malicious interference of contract at trial. *See Privette v. University of North Carolina*, 96 N.C. App. 124, 385 S.E.2d 185 (1989) (complaint admits defendants had proper motive by alleging they were directors of "Center" and Center's "Lab" thereby showing they had interest in insuring proper work procedures and legitimate professional interest in plaintiff's performance at Center); *Sides v. Duke University*, 74 N.C. App. 331, 328 S.E.2d 818, *disc. rev. denied*, 314 N.C. 331, 333 S.E.2d 490 (1985) (complaint must admit of no other motive for interference other than malice). Thus, the trial court did not err in granting defendants' motion for summary judgment as to plaintiff's claim for malicious interference of contract.

## CONSTRUCTIVE WRONGFUL DISCHARGE

[6] For her third cause of action, plaintiff alleges in tort that she was wrongfully "constructively discharged by Defendants in violation of public policy." Assuming that plaintiff was wrongfully constructively discharged, she is nonetheless not entitled to assert the tort of wrongful discharge because the tort of wrongful discharge arises only in the context of employees at will. *See Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 381 S.E.2d 445 (1989); *Sides*, 74 N.C. App. 331, 328 S.E.2d 818. Breach of contract is the proper claim for a wrongfully discharged employee who is employed for a definite term or an employee subject to discharge only for "just cause." *Elmore*, 191 N.C. at 188, 131 S.E. at 636. Plaintiff is not an employee at will because she had attained the status of a career teacher under N.C. Gen. Stat. § 115C-325(c) (Supp. 1993) and could not be dismissed or demoted except for reasons specified in Section

115C-325(e)(1). Therefore, plaintiff's claim based on the tort of wrongful discharge was correctly dismissed by the trial court.

PUNITIVE DAMAGES

Because we hold that the trial court did not err in granting summary judgment for defendants on each of plaintiff's three causes of action, plaintiff cannot make out a prima facie case for punitive damages because she cannot make out a prima facie case for the underlying torts. *See Jones v. Gwynne*, 312 N.C. 393, 405, 323 S.E.2d 9, 16 (1984). Accordingly, the trial court did not err in dismissing plaintiff's action, including her claim for punitive damages.

Affirmed.

Judges COZORT and JOHN concur.