Carolyn J. BUCKNER, Plaintiff,

v.

**GENERAL SIGNAL TECHNOLOGY CORPORATION; and Larry Buckner, Defendants.**

No. 1:99CV116–C.

United States District Court,
W.D. North Carolina,
Asheville Division.

June 13, 2000.

J. Elizabeth Spradlin, J.E. Spradlin, Asheville, NC, for Carolyn J. Buckner.

Robin E. Shea, Constangy, Brooks & Smith, LLC, Winston-Salem, NC, for General Signal Technology Corp.

Robert G. Karriker, Asheville, NC, for Larry Buckner.

## MEMORANDUM OF DECISION

COGBURN, United States Magistrate Judge.

**THIS MATTER** is before the court pursuant to 28, United States Code, Sec-

tion 636(c). Defendants have moved for summary judgment and supported their motion with a memorandum of law. In response, plaintiff has filed a timely memorandum in opposition, to which defendants filed a reply. On May 2, 2000, oral arguments were heard.

## I. Background

Plaintiff asserts four causes of action—a Title VII action for sexual harassment against both defendants; a common-law claim for slander asserted against the individual defendant; a common-law claim for intentional infliction of emotional distress against both defendants; and a claim for discharge in retaliation for complaints of sexual harassment against the corporate defendant.

The corporate defendant manufactures refrigerators and freezers for laboratory use. While not their intended purpose, those units can also be used in the home. Plaintiff began working at the corporate defendant's Asheville plant in 1987 in the wiring department. In 1990, she successfully bid for a position in the stockroom, where the individual defendant was her supervisor.

Plaintiff makes no claim in this action that the individual defendant used foul language, told inappropriate jokes, or made any sexual advance, either verbally or physically. Instead, plaintiff contends that the individual defendant made a series of statements over a number of years that were disparaging of women in the workplace or that he subjected women to vocational aptitude or skills tests to which he did not subject men. Specifically, she contends, as follows:

(1) In 1990, the individual defendant subjected plaintiff, but not the male applicants, to testing regarding the operation of a forklift.

(2) In 1990, the individual defendant, when responding to plaintiff's question regarding why it was taking so long to place her into the job, said, "A woman had no business [being] in the stockroom."

(3) In 1994 or 1995, plaintiff was given the most difficult area of the stockroom—moving heavy compressors—which she accomplished with the use of a forklift and hand truck. (The individual defendant contends that plaintiff's assignment was the easiest, it allowed plaintiff time to run company errands outside the plant, and it was a sought-after position.)

(4) In 1994, the individual defendant issued a warning to plaintiff when she refused to cut a length of pipe when instructed to do so by a team leader. (Apparently, the individual defendant claimed it was his order that was disobeyed, when, in fact, it was an order of the team leader, who did not have authority. The warning was later reduced by the corporate defendant's Human Resources Department.)

(5) In 1996, the favorable "errand duty" was taken away from plaintiff, which action she contends is more evidence of sex discrimination, because the errand duty was not taken away from male employees who preceded her until they had accidents. (The individual defendant contends that several employees told him that plaintiff was running personal errands on company time during the 1995 holiday season. When plaintiff took leave and another employee was assigned the errand task, the individual defendant observed that the task was accomplished quicker.)

(6) Sporadically, the individual defendant made statements that women were not qualified to work in the

stockroom and that he hoped women would not apply for those positions, and he made such statements every time a stockroom position was posted—August 1990, December 1994, February 1995, December 1996, and March 1997.

(7) The individual defendant made teasing comments about plaintiff being thin, with specific reference to her posterior. (Plaintiff admits, however, that she engaged in self-deprecating humor about her thinness.)

In her deposition, plaintiff states that the individual defendant could have been joking when he made the offending comments about women in the workplace and that she was joking when she made sporadic comments about "worthless men." C. Buckner Depo., at 76, 214.

In 1997, plaintiff was allegedly terminated from her employment over the "freezer incident." Rather than recite in detail all the facts relating to that $175 transaction, the court will summarize what purportedly occurred. As mentioned above, the corporate defendant manufactures freezers and refrigerators for laboratory use. Occasionally, those units are not sold to laboratories due to cosmetic "dings and dents." As a perk of working for the corporate defendant, employees are, from time to time, allowed to bid on those units, a process run by the Human Resources Department of the plant. Units that are not bid on may then be sold to any employee on a first-come, first-serve basis. Once the employee made payment, Human Resources would issue an "authorization" for removal of the unit from the plant. Without the "authorization," the unit was not to leave the premises.

In July 1997, such a sale was conducted. Later that month, a few units, located in the shipping area of the plant, appeared to be left over from that sale. Some of plaintiff's friends wanted to purchase a unit if any were left over after the auction. Plaintiff inquired with Human Resources concerning one unit marked at $175 and was told it was available for sale. She called her friends, who came over that day with a check for $175 and a truck for transporting the unit. Plaintiff states that she carried the check from the shipping area to Human Resources, told the individual defendant what was going on, and displayed to him the check. When she presented the check to Human Resources, they refused to accept it because the vice president of manufacturing said that the unit had not been through the bidding process and other employees had expressed an interest in it.

Having been denied the right to purchase the unit, plaintiff returned to the shipping area with her friends' check in hand. In the meantime, however, the individual defendant had assisted her friends in loading the unit into their truck, and her friends had driven away, all without the required "authorization" for removal. The individual defendant learned either that day or the next of the improper removal, and heated discussions were had between plaintiff and the individual defendant during the remainder of the week, including an accusation in a private conversation between the two of them that plaintiff had stolen the unit. Plaintiff's attempts at getting her "friends" to return the unit were unsuccessful. On Wednesday of that week, plaintiff was advised by the vice president of manufacturing that if she failed to have the unit returned, it would result in a reprimand. By Friday, when the unit had not been returned, the vice president of manufacturing fired plaintiff over the incident, citing (1) taking unfair advantage of an employee benefit and (2) insubordination in failing to bring the unit back when instructed to do so. Plaintiff

contends that the change in the vice president's position was the result of the individual defendant telling him that plaintiff had stolen the unit. The vice president contends that he alone made the decision to fire plaintiff, he was unaware of plaintiff's claims of having been sexually harassed by the individual defendant, and the individual defendant made no statement to him to the effect that plaintiff had stolen the unit.

Plaintiff has also presented evidence concerning her emotional distress. She has been diagnosed as suffering from depression, beginning in 1994, three years prior to her discharge. The undisputed medical record indicates that plaintiff's depression finds its origin in untreated symptoms related to menopause, and that it was aggravated post-termination by marital problems.

A charge of discrimination was lodged with the EEOC on September 15, 1997; a right-to-sue letter was issued on February 24, 1999; and plaintiff commenced this action in a timely fashion on May 17, 1999.

## II. Discussion

### A. Jurisdiction

This matter arises under Title VII of the Civil Rights Act of 1964, as amended—42, United States Code, Sections 2000e, *et seq.* Plaintiff claims that she was sexually harassed and discharged in retaliation for making claims of harassment. This court has jurisdiction over plaintiff's claims. 28 U.S.C. § 1343; 42 U.S.C. § 2000e–5(f)(3).

In addition to claims made pursuant to the laws of the United States, plaintiff has made claims for intentional infliction of emotional distress and defamation, which are governed by the laws of the State of North Carolina. This court's jurisdiction over those claims is pursuant to statutory supplemental jurisdiction, which provides that a federal court's original jurisdiction extends to nonfederal claims when the federal question is substantial and the claims asserted could be brought in one proceeding. In *United Mine Workers v. Gibbs,* 383 U.S. 715, 727, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court found, in pertinent part, as follows:

> [If] considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in the federal courts to hear the whole.

Inasmuch as it appears that plaintiff's state-law claims arise from the same transactions or occurrences upon which her federal claims are based, the issues are properly joined in this action.

### B. Summary Judgment Standard

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the nonmoving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving [sic] party, there is no "genuine issue for trial."

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted; emphasis in the original)

(quoting Fed.R.Civ.P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. *Id.* "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Id.*, at 248, 106 S.Ct. 2505. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id.*

> [T]he court is obliged to credit the factual asseverations contained in the material before it which favor the party resisting summary judgment and to draw inferences favorable to that party if the inferences are reasonable (however improbable they may seem).

*Cole v. Cole*, 633 F.2d 1083, 1092 (4th Cir.1980). Affidavits filed in support of defendants' Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. *United States ex rel. Jones v. Rundle*, 453 F.2d 147 (3d Cir.1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. *Davis v. Zahradnick*, 600 F.2d 458 (4th Cir.1979).

### C. Title VII

#### 1. Introduction

■ Title VII has created two recognized causes of action—*quid-pro-quo* harassment and hostile work environment. The respective burdens in the two types of sexual-harassment claims may be met with direct evidence, introduction of statements, or circumstantial evidence which is relevant and probative. *Moore v. City of Charlotte*, 754 F.2d 1100 (4th Cir.), *cert. denied*, 472 U.S. 1021, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985). As discussed *supra*, plaintiff's burden is to show that there is a genuine issue of material fact warranting trial.

#### 2. *Quid–Pro–Quo* Harassment

■ *Quid-pro-quo* harassment is not alleged herein and, therefore, will be discussed only briefly. It is defined as "harassment in which a supervisor demands sexual consideration in exchange for job benefits," *Katz v. Dole*, 709 F.2d 251, 254 (4th Cir.1983), *see also Spencer v. General Electric Co.*, 894 F.2d 651, 658 (4th Cir.1990); and consists of conditioning employment benefits on the employee's submitting to the sexual advances or threatening adverse employment actions if the employee does not submit, *see Tomkins v. Public Serv. Elec. & Gas Co.*, 568 F.2d 1044 (3d Cir.1977). "Benefits" may include the taking of adverse employment action against an employee who refuses to submit to the supervisor's sexual advances. *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554 (11th Cir.1987).

#### 3. Hostile Work Environment

■ In order to maintain a claim of hostile work environment, it is required that four specific elements be shown:

> (1) that the conduct was unwelcome, (2) that the harassment was based on sex, (3) that the harassment was sufficiently pervasive or severe to create an abusive working environment, and (4) that some basis exists for imputing liability to the employer.

*Paroline v. Unisys Corp.*, 879 F.2d 100, 105 (4th Cir.1989), *vacated in part*, 1989 U.S.App. LEXIS 13074 (4th Cir.1989), *vacated* 900 F.2d 27 (4th Cir.1990). The "notice" requirement can be rebutted by the employer directly or through evidence

which shows the employer took prompt remedial action. *Id.* "Title VII was not designed to create a federal remedy for all offensive language and conduct in the workplace." *Hopkins v. Baltimore Gas & Elec. Co.,* 77 F.3d 745, 754 (4th Cir.), *cert. denied,* 519 U.S. 818, 117 S.Ct. 70, 136 L.Ed.2d 30 (1996). Rather, its purpose is to protect a "reasonable person" from an environment in which abuse is sufficiently severe or pervasive as to alter the conditions of his or her employment. *Id.* at 753 (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 19, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), and *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). Each element will be discussed below in the context of a *prima facie* case.

### 4. A *Prima Facie* Case

#### a. Introduction

From the outset, plaintiff cannot build a *prima facie* case of discrimination in 1997 by reaching back into the early years of her employment for isolated incidents of alleged gender discrimination. Within the 180–day period preceding her charge of discrimination, the only alleged misconduct by the individual defendant is a statement he purportedly made in 1997 that he hoped no women would apply for a job in the stockroom. Outside the period are four other statements spread between 1990 and 1996. The court cannot find that the other incidents of conflict between plaintiff and the individual defendant are relevant, inasmuch as they appear unrelated to sex or gender.

#### b. Continuing Violation

 Plaintiff contends that despite her failure to raise such claims within 180 days of occurrence, all of the individual defendant's alleged wrongful conduct, spanning 1990–1997, should be considered by this court under a continuing-violation theory. While it is clear that the five sexist statements of the individual defendant are closely connected in theme, they are not closely connected in time. Even if the court were to assume a close connection between the timely statement and the untimely statements and an actual violation of the law within the requisite time period, plaintiff has not shown frequently recurring violations of her rights and an unawareness of her duty to assert those rights. *Hill v. AT & T Technologies, Inc.,* 731 F.2d 175 (4th Cir.1984); *Berry v. Board of Supervisors of L.S.U.,* 715 F.2d 971 (5th Cir.1983). Clearly, a handful of isolated sexist remarks over a number of years, typically followed by months, if not years, of harmonious working relations, is not the "continuing violation" which the law was intended to remedy. Finding no continuing violation, the court will consider the sexist remark that occurred within the statutory period. In an abundance of caution, the court will also consider, in the alternative, the remaining four sexist comments.

#### c. Unwelcome Conduct

There is a dispute as to whether the individual defendant's sexist remarks about women in the workplace were made in jest. Resolving that dispute in favor of plaintiff for the limited purpose of ruling on the pending motion, the court finds that plaintiff has shown that the individual defendant made sexist comments and that those statements were unwelcome conduct.

#### d. Based on Sex

Clearly, the comments made by the individual defendant were gender based and survive the second element.

#### e. Pervasiveness

As the Court of Appeals for the Fourth Circuit has held: "Whether ... harass-

ment was sufficiently severe or pervasive is quintessentially a question of fact." *Paroline v. Unisys Corp., supra,* at 105. In the context of summary judgment, the issue is whether there is a genuine issue of material fact warranting trial.

In *Hartsell v. Duplex Products, Inc.,* 123 F.3d 766 (4th Cir.1997), the appellate court held that Title VII "prohibits only harassing behavior that is so severe and pervasive as to render the workplace objectively hostile." *Id.,* at 773. In *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), the Supreme Court held that isolated comments are simply not enough to give rise to a claim of unlawful sexual harassment.

 In this case, the court must determine what constitutes the very minimum for alleging harassment under Title VII. The first question is what is severe? Severe conduct is conduct that would be extreme, amounting to a change in the terms and conditions of employment. *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Considered alone, the 1997 incident is not "severe," in that it could not be viewed as changing the terms and conditions of plaintiff's employment. Plaintiff's own testimony belays her theory, inasmuch as she enjoyed cordial working relations with the individual defendant during the bulk of her tenure and was equivocal as to whether he intended the cited sexist statements to be taken seriously. Plaintiff testified that her own sexist comments were intended to be comic relief. Certainly, sexist banter which the recipient did not know whether to take seriously was not "severe." Even if the court were to assume the individual defendant's comments were serious, they do not appear to be so extreme as to cause a change in the conditions or terms of plaintiff's employment. The appellate court in *Hartsell* pointed out that the misconduct must render the workplace *objectively* hostile. The court has searched plaintiff's evidence and, while finding that plaintiff subjectively believed she was treated differently, can find no objective evidence that the individual defendant's sexist remarks were put into practice on the floor of the storeroom. Instead, plaintiff appears to have received favorable accommodations at most every turn—she was awarded the duty of running company errands; and, when her friends came to the loading dock, the individual defendant saw to it that they received prompt service, even though such prompt service, unwittingly,[1] played a part in plaintiff's termination.

Considered alone, the 1997 incident was not severe. Although it reflected an archaic attitude and was contrary to law, it affected no term or condition of plaintiff's employment. Even if the court were to take into consideration the four earlier comments, it appears that they, although, no doubt, unpleasant irritants and indicative of a person who is out of touch with social and legal norms, had no objective impact on plaintiff's day-to-day employment. Plaintiff has not satisfied her burden of coming forward with evidence upon which a reasonable finder of fact could determine that her workplace was charged with gender-based discrimination so as to make it objectively abusive. *See Smith v. First Union Natl. Bank,* 202 F.3d 234 (4th Cir.2000). Plaintiff's Title VII hostile-work-environment claim, therefore, will be dismissed.

---

1. There is no evidence that the individual defendant assisted plaintiff's friends for the purpose of getting plaintiff in trouble.

### f. Title VII Claim Against Individual Defendant

 The reasoning of the Court of Appeals for the Fourth Circuit in *Lissau v. Southern Food Service, Inc.*, 159 F.3d 177 (4th Cir. October 28, 1998), compels this court to dismiss the Title VII claims brought against the individual defendant. Clearly, a supervisory employee is not an "employer" subject to Title VII liability under the reasoning of *Lissau*.

### D. Defamation Claim Against The Individual Defendant

 Plaintiff contends that the individual defendant committed the common-law tort of slander when he allegedly told the vice president of manufacturing that plaintiff had stolen the freezer unit. The elements of slander are that the statement (1) was made to a third person and (2) was false. *Andrews v. Elliot,* 109 N.C.App. 271, 426 S.E.2d 430, 432 (1993).

 The court finds that the purported statement, if made and untrue, would amount to slander *per se*, because

> when considered alone without explanatory circumstances [the statement] (1) charges that a person has committed an infamous crime ... (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace.

*Gaunt v. Pittaway*, 135 N.C.App. 442, 520 S.E.2d 603, 607 (citation omitted). To survive the instant motion, plaintiff's burden is to show that the alleged statement was communicated to a person or persons other than the person defamed. *Andrews, supra,* at 432. Plaintiff testified that the statement was made to her and that she believes it was made to the vice president of manufacturing because he changed his position as to discipline. Plaintiff's belief

is speculative, at best, and would not be admissible. In any event, the alleged slander occurred in July 1997, and this action was not filed until May 1999, nearly two years after the alleged tortious conduct. North Carolina imposes a one-year period of limitation on slander. N.C. Gen.Stat. Chapter 1–54(3). For the reasons set out above, plaintiff's defamation claim will be dismissed.

### E. Retaliation

A plaintiff may establish a case of retaliation for making charges of gender discrimination through use of a *"McDonnell Douglas* scheme." *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *McNairn v. Sullivan,* 929 F.2d 974, 980 (4th Cir.1991). To make out a *prima facie* case of retaliation, plaintiff would have to show the following:

(1) she engaged in protected activity;

(2) she was subjected to an adverse employment action; and

(3) a causal relationship existed between the first two elements.

If a plaintiff establishes such a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Upon such a showing by the employer, the burden would then shift back to the plaintiff to show by a preponderance of the evidence that the legitimate reasons offered by the employer were not true reasons, but were pretext for retaliation. *Id.* To make such a showing, the plaintiff must prove that "but for" the protected conduct, the adverse employment action would not have occurred.

The corporate defendant concedes, for the purposes of argument, that plaintiff complained to the company about the individual defendant and the discrimination

she perceived and that she was subjected to an adverse employment action in July 1997. Plaintiff, therefore, has satisfied the first two elements of a *prima facie* case.

■■■■ Plaintiff, however, has presented no evidence of any causal link between the first two elements that would satisfy the third element of a *prima facie* case. Close temporal proximity between the first two elements has been held to satisfy the third element. *See Carter v. Ball*, 33 F.3d 450, 460 (4th Cir.1994) (five months); *Williams v. Cerberonics, Inc.*, 871 F.2d 452 (4th Cir.1989) (four months). Likewise, distant temporal proximity may indicate no retaliatory motivation. *See Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739 (11th Cir.1996). In this case, there is no evidence that the vice president of manufacturing even knew that plaintiff had filed any grievances against her supervisor. Indeed, the only evidence is to the contrary, indicating that the decision maker had been on the job for only one year and made his decision based solely on what he perceived to be an abuse of an employee benefit and failure to follow instructions as to the return of the unit.

■■■■ Finally, not only can the court find no causal link between plaintiff's grievances and her termination, the undisputed record before the court shows that the termination of plaintiff's employment was the direct result of the freezer incident. Although firing a long-term employee over such a misunderstanding is so odd that it causes the court to wonder as to whether it has been given all of the facts, the corporate defendant has come forward with a legitimate business reason supporting its decision. Plaintiff has presented no evidence, only her own speculation, that such decision was in any manner pretextual. Speculation and conjecture raise a mere possibility of discrimination rather than the reasonable probability which is

necessary to support an inference of discrimination. *Lovelace v. Sherwin–Williams Co.*, 681 F.2d 230, 241–42 (4th Cir.1982). Speculative assertions that a defendant's motivation was unlawful is not enough to withstand summary judgment, *Goldberg v. B. Green and Co.*, 836 F.2d 845, 848 (4th Cir.1988); and conclusory statements will not satisfy plaintiff's burden in responding to the motion for summary judgment. *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211 (4th Cir.1987). Unsupported allegations "do not confer talismanic immunity from Rule 56." *Ross v. Communications Satellite Corp.*, 759 F.2d 355, at 365 (4th Cir.1985).

■■■■ Plaintiff's allegations of discriminatory animus clearly are speculative and reflect plaintiff's belief that, rather than her own actions in securing a freezer for her friends, it was her grievances that motivated the corporate defendant to terminate her employment. This court cannot allow a jury to decide issues based on speculation. Rules 401 and 602, Fed. R. of Evid. Finding that plaintiff has failed to establish a causal connection between the first two elements, the court will dismiss such claim, inasmuch as plaintiff has not established a *prima facie* case. Alternatively, if plaintiff could have established a *prima facie* case, the court finds that summary judgment would be entered against her, inasmuch as defendant has articulated a legitimate, nondiscriminatory reason for her discharge, to which plaintiff has not shown pretext.

### F. Intentional Infliction of Emotional Distress

■■■■ Defendant has also moved for summary judgment on plaintiff's state-law claim of intentional infliction of emotional distress. The elements of the tort are "(1) extreme and outrageous conduct, (2) which

is intended to cause and does cause (3) severe emotional distress." *Hogan v. Forsyth Country Club,* 79 N.C.App. 483, 488, 340 S.E.2d 116, *disc. rev. denied,* 317 N.C. 334, 346 S.E.2d 140 (1986). "It is a question of law for the court to determine, from the materials before it, whether the conduct complained of may reasonably be found to be sufficiently outrageous as to permit recovery." *Id.,* at 490, 340 S.E.2d 116. As discussed above in the context of a Title VII claim, neither the conduct of the individual defendant nor that of the corporate defendant was extreme.

▆▆▆ For purposes of ruling on defendant's motion, the court has resolved any disputed facts in plaintiff's favor. Even if the court were to consider all incidents, they do not "exceed all bounds of decency," *West v. King's Dep't Store, Inc.,* 321 N.C. 698, 365 S.E.2d 621, 625 (1988), and cannot be " 'regarded as atrocious, and utterly intolerable in a civilized community.' " *Wagoner v. Elkin City Schools' Bd. of Educ.,* 113 N.C.App. 579, 440 S.E.2d 119, 123 (1994) (citation omitted). There is no evidence that would support plaintiff's contention that her depression was attributable to defendants. *Waddle v. Sparks,* 331 N.C. 73, 414 S.E.2d 22, 27 (1992). Rather, the evidence submitted indicates that the onset of plaintiff's depression is likely attributable to normal changes-of-life, and that the post-termination aggravation is attributable to marital discord. Finally, there is no evidence that plaintiff's normal activities of daily living were adversely affected.

In *Hogan,* wherein a defendant threatened a plaintiff with bodily injury and advanced on her with a knife after she refused his sexual advances, the appellate court found that the plaintiff had stated a cause of action and that the defendant's conduct was "beyond the 'bounds usually tolerated by decent society.' " *Hogan v.*

*Forsyth Country Club Co., supra,* at 491, 340 S.E.2d 116. While the conduct alleged herein could be construed as backward, ignorant, and inappropriate in any work environment, there is no evidence that the individual defendant crossed the line drawn by *Hogan.*

The cause of action for intentional infliction of emotional distress is a last resort for calling to task (1) those who engage in primitive and uncivilized behavior in an attempt to impose their prurient will on others or (2) those in positions of authority and responsibility who allow such conduct to occur or continue. If courts were to permit such claims, absent a showing of conduct which exceeded bounds of common decency, the cause of action would be rendered meaningless. Inasmuch as plaintiff cannot meet the standards set forth in *Hogan,* judgment must be entered for defendants as to plaintiff's claim of intentional infliction of emotional distress.

A judgment granting defendant's Motion for Summary Judgment and dismissing all of plaintiff's claims with prejudice will be entered simultaneously herewith.