Nat'l Fin. Partners Corp. v. Estate of Harry A. Stokes, 2014 NCBC 49.

STATE OF NORTH CAROLINA

UNION COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 3319

NATIONAL FINANCIAL
PARTNERS CORP. and
CONTEMPORARY BENEFITS
DESIGN, INC.,

            Plaintiffs,

v.

DONALD F. RAY; EMILY L. RAY;
THOMAS H. TAYLOR; VIRGINIA A.
TAYLOR; JIMMY W. BRYANT;
NANCY D. KIMSEY; BILLY W.
BAUCOM; CHRISTINE H.
BAUCOM; TERRY W. BAUCOM;
MELANIE E. BAUCOM; ANDREW
W. BAUCOM and MATTHEW G.
BAUCOM, by and through their
Guardians Ad Litem, TERRY W.
BAUCOM and MELANIE E.
BAUCOM; MARK G. TARLETON;
CYNTHIA F. TARLETON;
MICHAEL F. SWEENEY; and
ELIZABETH A. SWEENEY,

            Intervenor
Plaintiffs and
            Cross-claimants,

v.

ESTATE OF HARRY A. STOKES,
SHARYN C. STOKES, individually
and in her capacity as Executrix of
The Estate of Harry A. Stokes,
CONTEMPORARY BENEFITS
MANAGEMENT, LLC, SUNSET
SLUSH OF MATTHEWS, LLC,
"JOHN DOES" 1-10 (fictitious
individuals), and XYZ COMPANIES
1-10 (fictitious entities),

            Defendants.

ORDER AND OPINION

{1}    **THIS MATTER** is before the Court upon Intervenor Plaintiffs Donald F.

Ray and Emily L. Ray's (the "Rays") Motion to Dismiss, the Rays' Motion to Strike,

in addition to Motions to Strike filed by fourteen other Intervenor Plaintiffs –
Thomas H. Taylor, Virginia A. Taylor, Jimmy W. Bryant, Nancy D. Kimsey, Billy
W. Baucom, Christine H. Baucom, Terry W. Baucom, Melanie E. Baucom, Andrew
W. Baucom and Matthew G. Baucom, by and through their Guardians Ad Litem,
Terry W. Baucom and Melanie E. Baucom, Mark G. Tarleton, Cynthia F. Tarleton,
Michael F. Sweeney, and Elizabeth A. Sweeney (hereinafter, "Intervenor Plaintiffs")
– and the Rays' Motion to Compel (collectively, the "Motions") in the above-
captioned case.

{2}    After considering the Motions, the briefs in support of and in opposition to
the Motions, and the arguments of counsel at the September 10, 2014 hearing, the
Court **GRANTS** the Rays' Motion to Dismiss, **GRANTS** in part and **DENIES** in part
the Rays' Motion to Strike, **GRANTS** in part and **DENIES** in part Intervenor
Plaintiffs' Motions to Strike, and **GRANTS** in part and **DENIES** in part the Rays'
Motion to Compel.

> *Winget, Spadafora & Schwartzberg, LLP, by Luigi Spadafora and Anthony D. Green, and Moore & Van Allen PLLC, by Anthony T. Lathrop, Martha J. Efird, and Jason Idilbi, for Plaintiffs National Financial Partners Corp. and Contemporary Benefits Design, Inc.*
>
> *Shipman & Wright, LLP, by Gary K. Shipman and W. Cory Reiss, for Intervenor Plaintiffs Donald F. Ray and Emily L. Ray.*
>
> *Weaver, Bennett & Bland, P.A., by Michael David Bland, for Intervenor Plaintiffs Mark G. Tarleton, Cynthia F. Tarleton, Michael F. Sweeney, and Elizabeth A. Sweeney.*
>
> *Helms Robison & Lee, P.A., by R. Kenneth Helms, Jr. and Stephen M. Bennett, for Intervenor Plaintiffs Thomas H. Taylor, Virginia A. Taylor, Jimmy W. Bryant, Nancy D. Kimsey, Billy W. Baucom, Christine H. Baucom, Terry W. Baucom, Melanie E. Baucom, Andrew W. Baucom and Matthew G.*

*Baucom, by and through their Guardians Ad Litem, Terry W. Baucom and Melanie E. Baucom.*

*Sharyn C. Stokes, pro se, in her capacity as Defendant Executrix of the Estate of Harry A. Stokes.*

*Defendant Estate of Harry A. Stokes, pro se.*

*Alexander Ricks PLLC, by Mary K. Mandeville, and Perry, Bundy, Plyler, Long & Cox, LLP, by H. Ligon Bundy and Christopher Cox, for Defendants Sharyn C. Stokes, individually, and Sunset Slush of Matthews, LLC.*

Bledsoe, Judge.

I.

BACKGROUND

{3}   For purposes of this Order and Opinion, the Court recites those facts from the Complaint that are relevant to the Court's legal determinations.  The Court, however, does not make any factual findings concerning these allegations in connection with these Motions.

{4}   The claims in this matter arise out of an alleged Ponzi scheme purportedly orchestrated by Harry A. Stokes ("Harry Stokes").

{5}   Prior to July 14, 2006, Harry Stokes and Sharyn C. Stokes ("Sharyn Stokes") were the sole owners of Contemporary Benefits Design, Inc. ("CBD"), a benefits brokerage firm incorporated in North Carolina and headquartered in Monroe, North Carolina.  (Compl. ¶¶ 6, 13-14.)

{6}   On July 14, 2006, CBD was purchased by and merged into (the "Merger") a wholly-owned subsidiary of National Financial Partners Corp. ("National"), a Delaware corporation with executive offices located in New York, New York.  (*Id.* at ¶¶ 5, 13.)

{7}     In connection with the Merger, National, as the purchasing parent company, and Harry and Sharyn Stokes, as sellers of CBD, executed the "Merger Agreement," pursuant to which Harry and Sharyn Stokes agreed, *inter alia*, to indemnify National for any losses sustained by National as a result of misrepresentations or breaches of warranties made by Harry and/or Sharyn Stokes concerning CBD as it existed prior to the Merger. (*Id.* at ¶¶ 15-21.)

{8}     Also in connection with the Merger, Harry and Sharyn Stokes formed Contemporary Benefits Management, LLC ("CBM"'"), a North Carolina limited liability company, through which they would manage CBD on National's behalf. (*Id.* at ¶¶ 13, 22.) To this end, CBM and Harry Stokes executed a "Management Agreement" with National, whereby Harry Stokes agreed, *inter alia*, that he and Sharyn Stokes would indemnify National with respect to any losses sustained by National as a result of any breach of duties owed to, or mismanagement of, CBD by CBM. (*Id.* at ¶¶ 23-27.)

{9}     On or about August 15, 2013, Harry Stokes confessed that he had been "investing" his clients' funds in securities relating to a fictitious entity, BlackBurg Financial, LLC ("BlackBurg"). (*Id.* at ¶ 30.) Harry Stokes admitted that he had been engaging in this scheme since before the Merger and that, although he had intended to repay his clients, he had run out of funds and was unable to do so. (*Id.*) National immediately terminated its relationship with Harry Stokes upon learning of these admissions. (*Id.* at ¶ 31.) Harry Stokes committed suicide on August 19, 2013. (*Id.* at ¶ 32.)

{10} Sharyn Stokes submitted her resignation to CBD on September 17, 2013. (Def. Sunset Slush Ans. ¶ 31.) She has received death benefits in excess of one million dollars as the beneficiary of Harry Stokes' life insurance policy. (*Id.* at ¶ 43.)

{11} On December 19, 2013, National and CBD (together, "Plaintiffs") filed a complaint in Union County Superior Court, asserting various claims for relief against Defendants Estate of Harry Stokes, Sharyn Stokes, individually and in her capacity as Executrix of the Estate of Harry Stokes, CBM, Sunset Slush of Matthews, LLC ("Sunset Slush"), "John Does" 1-10 (fictitious individuals), and XYZ Companies 1-10 (fictitious entities) (collectively, "Defendants"), in connection with the BlackBurg investments and Harry Stokes' alleged Ponzi scheme.

{12} Plaintiffs allege that funds obtained through the BlackBurg investments were funneled into Sunset Slush, a North Carolina limited liability company that was wholly-owned by Harry and Sharyn Stokes, and converted by Harry and Sharyn Stokes to their own use. (Compl. ¶ 41.) Plaintiffs further allege that, as of the filing of this action, the purported BlackBurg investors had "submitted claims and documentation to Plaintiffs indicating that their aggregate allegedly missing funds may represent an amount somewhere between $1,058,437.82 and $2,429,909.95." (*Id.* at ¶ 39.)

{13} The fictional "John Does" and "XYZ Companies" named as Defendants in Plaintiffs' complaint represented those individuals and entities which Plaintiffs believed to have some involvement with the alleged Ponzi scheme – whether

through investment in BlackBurg or otherwise – but which Plaintiffs were unable to identify as of the filing of their complaint.[1]   (Compl. ¶¶ 11-12.)

{14}   On December 30, 2013, the Rays moved to intervene and to join NFP Securities, Inc. ("NFPSI"), a wholly-owned subsidiary of National, as a party to this action.  The Rays alleged that they were "among the investors who provided Mr. Stokes with monies that are the subject of the pending action, which were procured by fraud and converted by Mr. Stokes during and in the course and scope of his agency for [CBD, CBM, National, and NFPSI]." (Rays' Mot. Int., pg. 2.)  The Rays further alleged that Harry Stokes had solicited their investment in BlackBurg using his "investment authority and capabilities derived from his agency for [NFPSI], through which he purchased investment products, and was licensed to do so, as part of a relationship that Mr. Stokes, CBD Inc. and [National] advertised to their clients and potential clients, including the [Rays]." (*Id.*)

{15}   On January 14, 2014, an order was entered in Union County Superior Court granting the Rays' motion to intervene and denying the Rays' motion to join NFPSI as a party.  The Rays filed a complaint and crossclaims against Defendants and Plaintiffs on January 17, 2014.

{16}   This matter was designated a complex business case by the Chief Justice of the North Carolina Supreme Court on February 19, 2014, and assigned to this Court (Murphy, J.) on February 26, 2014.

---

[1] The parties indicated at the September 10, 2014 hearing their belief that the Rays and Intervenor Plaintiffs comprise the "entire universe" of individuals who invested in BlackBurg through Harry Stokes.

{17} On March 21, 2014, Plaintiffs filed an Answer to the Rays' Complaint and Cross Claims; Affirmative Defenses; and Cross-Complaint. Therein, Plaintiffs asserted forty-seven affirmative defenses and a crossclaim seeking to impose a constructive trust with respect to the "at least $25,000" that the Rays received from Harry Stokes "as a return on [the Rays'] BlackBurg investment." (Pls.' Cross-Complaint, ¶ 2.) Plaintiffs contended that it would be "inequitable" for the Rays to retain the returned funds in light of the fraudulent manner in which Harry Stokes had procured them and in light of Plaintiffs' claims and the claims of the other purported BlackBurg investors. (*Id.*)

{18} On April 17, 2014, the Rays moved to dismiss Plaintiffs' claim for a constructive trust on grounds that Plaintiffs lacked standing to seek and obtain a constructive trust and, in any event, had failed to state a claim for which relief could be granted. The Rays also filed a Motion to Strike, contending that many of the affirmative defenses raised by Plaintiffs had "no possible bearing on this litigation." (Rays' Mem. Supp. Mot. to Strike, pg. 2.)

{19} By order entered April 14, 2014, fourteen Intervenor Plaintiffs (in addition to the Rays) were permitted to intervene in this action as parties which, like the Rays, asserted that they had invested in BlackBurg through Harry Stokes and were victims of the alleged Ponzi scheme.

{20} Intervenor Plaintiffs filed complaints and crossclaims on April 25, 2014 and April 28, 2014. Plaintiffs filed an Answer, Affirmative Defenses, and Cross-Complaint in response to Intervenor Plaintiffs' claims against them on July 2, 2014,

asserting forty-six affirmative defenses and a claim against Intervenor Plaintiffs seeking the imposition of a constructive trust with respect to any funds they had recovered from their BlackBurg investments. Intervenor Plaintiffs filed Motions to Strike a number of Plaintiffs' affirmative defenses on July 23, 2014 and July 28, 2014.

{21} On July 1, 2014, following several exchanges between the Rays and Plaintiffs concerning discovery, the Rays filed a Motion to Compel, requesting that Plaintiffs be directed "to fully respond to the Interrogatories, Requests for Production of Documents, and Requests for Admission addressed to the Plaintiffs." (Rays' Mot. to Compel, pg. 2.) Plaintiffs filed Plaintiffs' Opposition to the Rays' Motion to Compel on July 21, 2014.

{22} The Court held a hearing on the Rays' Motion to Dismiss, Motion to Compel, and Motion to Strike, and on Intervenor Plaintiffs' Motions to Strike, on September 10, 2014.

II.
ANALYSIS

A. THE RAYS' MOTION TO DISMISS

{23} The Rays contend that Plaintiffs' claim against them for a constructive trust should be dismissed pursuant to Rule 12(b)(1) and/or Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. The Rays argue that dismissal is appropriate under Rule 12(b)(1) because Plaintiffs merely seek indemnification and, unlike the Rays, were not injured directly as a result of Harry Stokes' alleged Ponzi scheme – *i.e.*, Plaintiffs were not investors in BlackBurg. Thus, the Rays contend,

Plaintiffs lack standing to seek a constructive trust. The Rays further argue that Plaintiffs have failed to state a claim for a constructive trust because, in recovering only $25,000 of their $325,000 BlackBurg investment, the Rays have not been unjustly enriched as a matter of law. (Rays' Compl. ¶¶ 26, 35, 37.) Plaintiffs counter that the Rays may have colluded with, or at least been cognizant of, Harry Stokes' alleged scheme; that Plaintiffs will gain a better understanding of these issues through discovery; and that Plaintiffs have standing to seek a constructive trust in light of the numerous claims asserted against them by the BlackBurg investors.

### 1. Dismissal Pursuant to Rule 12(b)(1) (Standing)

{24} "If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim." *Estate of Apple ex rel. Apple v. Commercial Courier Exp., Inc.*, 168 N.C. App. 175, 177, 607 S.E.2d 14, 16 (2005).

> Standing consists of three main elements: "(1) 'injury in fact' -- an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Id.* (quoting *Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 114, 574 S.E.2d 48, 52 (2002)). "Standing is assessed at the time the complaint is filed." *Woodring v. Swieter*, 180 N.C. App. 362, 367, 637 S.E.2d 269, 275 (2006) (citing *Messer v. Town of Chapel Hill*, 346 N.C. 259, 260, 485 S.E.2d 269, 270 (1997)).

{25} "Courts of equity will impose a constructive trust to prevent the unjust enrichment of the holder of the legal title to property acquired through a breach of duty, fraud, or other circumstances which make it inequitable for him to retain it against the claim of the beneficiary of the constructive trust." *Cline v. Cline*, 297 N.C. 336, 343-44, 255 S.E.2d 399, 404 (1979). "'[A] constructive trust ordinarily arises out of the existence of fraud, actual or presumptive – usually involving the violation of a confidential or fiduciary relation – in view of which equity transfers the beneficial title to some person other than the holder of the legal title.'" *Leatherman v. Leatherman*, 297 N.C. 618, 621-22, 256 S.E.2d 793, 795-96 (1979) (quoting *Bowen v. Darden*, 241 N.C. 11, 13-14, 84 S.E.2d 289, 292 (1954)). A constructive trust "arises purely by construction of equity independently of any contract or of any actual or presumed intention of the parties to create a trust." *Teachey v. Gurley,* 214 N.C. 288, 292, 199 S.E. 83 (1938).

{26} Plaintiffs in the instant case have failed to carry their burden to demonstrate their standing to seek and obtain a constructive trust with respect to the funds that the Rays have recovered from their BlackBurg investments. There is no indication that the Rays owed a fiduciary duty to National or CBD, nor have Plaintiffs alleged that they are without an adequate remedy at law. *See In re Gertzman*, 115 N.C. App. 634, 640-41, 446 S.E.2d 130, 135 (1994) (providing that "[a] constructive trust does not arise where there is no fiduciary relationship and there is an adequate remedy at law" (citation and quotation marks omitted)); *Estate of Chambers v. Vision Two Hospitality Mgmt., LLC*, 2013 NCBC 52 ¶37 (N.C.

Super. Ct. Nov. 21, 2013), www.ncbusinesscourt.net/opinions/2013_NCBC_52.pdf ("A constructive trust is an improper remedy for claims redressed through an adequate legal remedy."). Indeed, even assuming the truth of Plaintiffs' allegations, it appears that a damages award would effectively redress Plaintiffs' alleged injury. *See, e.g., Robinson v. Deutsche Bank Nat'l Trust Co.*, 2013 Dist. LEXIS 68247, at *15-16 (E.D.N.C. May 14, 2013) ("Furthermore, Defendants' alleged wrongful actions and subsequent unjust enrichment, if demonstrated, have a specific value and therefore the resulting damage to Plaintiff can be cured through a monetary award.").

{27} Moreover, Plaintiffs have not met their burden of demonstrating that they have alleged the "concrete and particularized" injury necessary to confer standing. Whereas the Rays have clearly alleged that they have suffered "injury in fact" in that they are out-of-pocket $300,000 as a result of their BlackBurg investment, the basis for Plaintiffs' alleged injury is much more tenuous. Plaintiffs did not invest in BlackBurg, and although Plaintiffs have alleged an estimate of the *BlackBurg investors'* losses – "somewhere between $1,058,437.82 and $2,429,909.95" – any injury to Plaintiffs is inherently indirect, imprecise, and uncertain, as Plaintiffs will suffer losses only to the extent that the BlackBurg investors are not made whole by Defendants or otherwise. *See, e.g., Hughes v. Craddock*, No. COA 10-266, 2010 LEXIS 2050, at *20 (N.C. App. Nov. 2, 2010) (unpublished) (recognizing that "justification for a constructive trust would be irrelevant if the party bringing the action could not benefit therefrom, essentially lacking standing" and citing *Scott v.*

*United Carolina Bank,* 130 N.C. App. 426, 432-33, 503 S.E.2d 149, 153-54 (1998), for the proposition that "'[n]o one except a beneficiary or one suing on his behalf can maintain a suit against the trustee to enforce the trust or to enjoin or obtain redress for a breach of trust[;] . . . only beneficiaries have standing to sue to enforce a trust'") (alterations in original)).

{28}   Lastly, the Court notes that Plaintiffs have failed to present any authority to support their contention that a party *in their position* has standing to assert a claim for a constructive trust.  Plaintiffs' supplemental briefing on this precise issue advances case law that is supportive of the general notion that a constructive trust may be properly imposed to aggregate funds tainted in the context of a Ponzi scheme; but none of the cases brought forth by Plaintiffs supports the proposition that Plaintiffs here, as entities seeking to vindicate indemnity rights against Defendants, have standing to seek and obtain a constructive trust against the Rays on these facts.  The Court, accordingly, **GRANTS** the Rays' Motion to Dismiss and **DISMISSES** Plaintiffs' claim for a constructive trust with prejudice.

2. <u>Dismissal Pursuant to Rule 12(b)(6) (Failure to State a Claim)</u>

{29}   Alternatively, the Court concludes that Plaintiffs' claim is also subject to dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.   Not only have Plaintiffs failed to allege facts indicating that the Rays have been unjustly enriched through their recovery of $25,000 of their $325,000 BlackBurg investment, but Plaintiffs have also failed to allege that they have been

injured in fact or are presently entitled to relief on account of any conduct of the Rays.[2]

## B. MOTIONS TO STRIKE

{30}  The Rays' Motion to Strike and Intervenor Plaintiffs' Motions to Strike[3] (collectively, "Motions to Strike") substantially overlap with respect to the specific affirmative defenses they seek to strike.[4]  The Court, accordingly, finds it appropriate to address these Motions together.

{31}  The thrust of the Motions to Strike is straightforward: Plaintiffs have asserted numerous affirmative defenses with little or no factual support; as such, the defenses should be stricken pursuant to Rule 12(f) of the North Carolina Rules

---

[2] The Court notes that its alternative ruling under Rule 12(b)(6) would result in dismissal of Plaintiffs' claim without prejudice.  In light of the Court's dismissal of Plaintiffs' claim under Rule 12(b)(1), however, Plaintiffs' claim is dismissed with prejudice.

[3] In addition to the Rays' Motion to Strike, Intervenor Plaintiffs have filed two separate Motions to Strike – Intervenor Plaintiffs Thomas H. Taylor, Virginia A. Taylor, Jimmy W. Bryant, Nancy D. Kimsey, Billy W. Baucom, Christine H. Baucom, Terry W. Baucom, Melanie E. Baucom, Andrew W. Baucom, and Matthew G. Baucom, by and through their Guardians Ad Litem, Terry W. Baucom and Melanie E. Baucom filed their Motion to Strike on July 23, 2014; and Intervenor Plaintiffs Mark G. Tarleton, Cynthia F. Tarleton, Michael F. Sweeney, and Elizabeth A. Sweeney filed their Motion to Strike on July 28, 2014.  Intervenor Plaintiffs' two Motions to Strike advance the same challenges to the same affirmative defenses raised against them by Plaintiffs, and the Court, therefore, will not distinguish between them further in this Order.  The distinctions between the Rays' Motion to Strike and those filed by Intervenor Plaintiffs, however, are noted and discussed where necessary for purposes of the Court's analysis.

[4] Plaintiffs raised forty-seven affirmative defenses in response to the Rays' complaints and forty-six affirmative defenses in response to Intervenor Plaintiffs' complaints.  Plaintiffs' asserted affirmative defenses numbered one through forty-one are set forth identically in each of their responses.  Plaintiffs raise an additional defense – namely, that the Rays have no right to punitive damages – in Plaintiffs' forty-second affirmative defense against the Rays, which Plaintiffs do not assert against the other Intervenor Plaintiffs.  The remaining affirmative defenses asserted by Plaintiffs against the Rays and Intervenor Plaintiffs are identical.  Moreover, only the Rays' Motion to Strike challenges Plaintiffs' twenty-seventh,  fortieth, and forty-second (no right to punitive damages) affirmative defenses, and only Intervenor Plaintiffs' Motions to Strike challenge Plaintiffs' second, sixteenth, forty-fifth (forty-sixth as to the Rays), and forty-sixth (forty-seventh as to the Rays) affirmative defenses. The Motions to Strike otherwise challenge the same affirmative defenses.

of Civil Procedure. Plaintiffs counter that the Motions to Strike are "extremely premature given that this litigation remains in its very early stages with no substantial discovery completed." (Pls.' Mem. Opp. Int. Pls.' Mot. to Strike, pg. 1.)

{32} The Court notes preliminarily that the challenges to Plaintiffs' sixth (punitive damages barred) and forty-second affirmative defenses (no right to punitive damages)[5] were withdrawn at the September 10, 2014 hearing. These affirmative defenses, therefore, survive the Motions to Strike. Also at the hearing, Plaintiffs withdrew their thirty-third affirmative defense (res judicata / collateral estoppel / judicial estoppel). Plaintiffs' thirty-third affirmative defense is, therefore, **STRICKEN** without prejudice. The remaining contested defenses are addressed below.

{33} Rule 12(f) of the North Carolina Rules of Civil Procedure provides that "[u]pon motion made by a party . . . the judge may order stricken from any pleading any insufficient defense or any redundant, irrelevant, immaterial, impertinent, or scandalous matter." N.C. Gen. Stat. § 1A-1, Rule 12(f) (2013). "A motion under Rule 12(f) is a device to test the legal sufficiency of an affirmative defense." *Faulconer v. Wysong and Miles Co.*, 155 N.C. App. 598, 601, 574 S.E.2d 688, 691 (2002) (citing *Trust Co. v. Akelaitis*, 25 N.C. App. 522, 525, 214 S.E.2d 281, 284 (1975)). The granting of a motion to strike is generally disfavored "because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252

---

[5] Plaintiffs asserted this affirmative defense – "no right to punitive damages" – against the Rays only.

F.3d 316, 347 (4th Cir. 2001). "Nevertheless, defenses may be stricken from pleadings, if they are insufficient as a matter of law." *Palmer v. Oakland Farms, Inc.*, 2010 U.S. Dist. LEXIS 63265, at * 4 (W.D. Va. June 24, 2010). "A motion to strike an answer is addressed to the sound discretion of the trial court and its ruling will not be disturbed absent an abuse of discretion." *Broughton v. McClatchy Newspapers, Inc.*, 161 N.C. App. 20, 25, 588 S.E.2d 20, 25 (2003) (citing *Byrd v. Mortenson*, 308 N.C. 536, 302 S.E.2d 809 (1983)).

{34} "[T]o survive a motion to strike, a defendant must offer more than a 'bare-bones conclusory allegation which simply names a legal theory but does not indicate how the theory is connected to the case at hand.'" *Villa v. Ally Fin., Inc.*, 2014 U.S. Dist. LEXIS 25624, at *6 (M.D.N.C. Feb. 28, 2014) (citation omitted); *see also Johnson v. Clark*, 2013 U.S. Dist. LEXIS 95492, at *4-6 (E.D.N.C. July 9, 2013) (striking "conclusory defenses" that failed to allege sufficient facts to provide the plaintiff with sufficient notice of the affirmative defenses in question); *Koehler v. United States*, 2012 U.S. Dist. LEXIS 163816, at *3-4 (E.D.N.C. Nov. 15, 2012) (providing that "conclusory defenses, presented without any factual support, should be stricken"); *Odyssey Imaging, LLC v. Cardiology Assocs. of Johnston, LLC*, 752 F. Supp. 2d 721, 726 (W.D. Va. 2010) (explaining that "dismissal under Rule 12(f) is appropriate where the defendant has not articulated its defenses so that they are contextually comprehensible"). "When a court strikes a defense, the general practice is to grant the defendant leave to amend." *Banks v. Realty Mgmt. Serv.*, 2010 U.S. Dist. LEXIS 7501, at *3 (E.D. Va. Jan. 29, 2010).

{35} Plaintiffs have asserted forty-six and forty-seven affirmative defenses, respectively, in their responses to the claims filed by Intervenor Plaintiffs and the Rays. Plaintiffs concede that they have raised a number of these defenses for fear of waiver, or because of their belief that, upon further inquiry, such defenses may apply. In other words, Plaintiffs concede that many of their affirmative defenses are not currently well-grounded in fact, at least insofar as the facts are presently known to them. Plaintiffs' professed good faith belief that their presently unsupported defenses will acquire the requisite factual support through the discovery stage of these proceedings does not alter the reality that these defenses were speculative at the time Plaintiffs asserted them in their responsive pleading. The speculative nature of many of Plaintiffs' defenses is evident from the following assertions advanced by Plaintiffs in seeking to convince the Court of the validity of the identified affirmative defenses:

(i) third affirmative defense (failure to join an indispensable party) (contending that "*it may be* that other purported BlackBurg investors are indispensable parties if it [is] shown that Intervenor Plaintiffs profited from or were participants in any of the alleged misconduct by Defendants");

(ii) fifth affirmative defense (lack of standing) (contending that "*there is so much that is still unknown* that Plaintiffs do not concede that the Rays having standing to sue of their alleged claims");

(iii)     eighth affirmative defense (arbitration) (asserting that although "the full extent of any dealings between Intervenor Plaintiffs and Defendants is unknown . . . *it is conceivable* that there may be contracts executed between those parties containing arbitration clauses that Plaintiffs *might* be able to invoke");

(iv)     sixteenth affirmative defense (accord and satisfaction) (contending that "[i]t is . . . *far from certain* that Intervenor Plaintiffs did not receive full and complete return of whatever funds they provided to Mr. Stokes")[6];

(v)     seventeenth affirmative defense (assumption of risk) (asserting that Intervenor Plaintiffs "could have assumed risk *if they were involved* with the alleged misconduct of Defendants in some fashion *that has yet to be fully revealed*");

(vi)     twenty-first affirmative defense (unclean hands) (asserting "unclean hands [as] a *plausible* affirmative defense because [Plaintiffs] *do not know* what level of involvement, if any, Intervenor Plaintiffs had with Defendants' alleged misconduct");

(vii)     twenty-second affirmative defense (*in pari delicto*) (asserting as "a *plausible* affirmative defense");

(viii)     twenty-fourth affirmative defense (claims not ripe) (contending that "*it is currently unknown* by Plaintiffs what contracts Intervenor Plaintiffs might claim to have executed with Defendants" and thus "*it is*

---

[6] (Pls.' Mem. Opp. Int. Pls.' Tarleton and Sweeney's Mot. to Strike, pg. 6.)

*unknown* if there are conditions precedent to suit that Plaintiffs may be permitted to invoke");

(ix)  twenty-eighth affirmative defense (another action pending) (conceding that "[n]o action is pending of which Plaintiffs are currently aware" but noting that "[s]uit *may have been filed* against Defendants somewhere else or against Plaintiffs in some other jurisdiction" and that consolidation or transfer of the action is, therefore, "plausible");

(x)  thirtieth affirmative defense (fraud) (contending that although Plaintiffs "do not know" the level of Intervenor Plaintiffs' involvement with Defendants' alleged misconduct, fraud may become a viable defense upon acquiring such information through discovery);

(xi)  thirty-first affirmative defense (illegality) (seeking "to preserve this *potentially relevant* affirmative defense" while Plaintiffs discover "what contracts, if any, may have been executed between or among Intervenor Plaintiffs and Defendants");

(xii)  thirty-second affirmative defense (payment) (contending that "[i]t is *plausible* and *very conceivable*" that the Rays have received more than the $25,000 that the Rays have already admitted to recovering from their BlackBurg investment);

(xiii)  thirty-fourth affirmative defense (voluntary payment doctrine) (advancing the voluntary payment doctrine as a "plausible" affirmative defense because the circumstances surrounding the payments made by

the Rays and Intervenor Plaintiffs to Defendants are "not yet known"); and

(xiv) thirty-eighth affirmative defense (license) (asserting that although Plaintiffs "do not know what contracts, if any, may have been executed between or among Intervenor Plaintiffs and Defendants," the defense of license, which here is directed at "*potential* contractual relations" between the parties, should be sustained until completion of discovery)

(xv) forty-sixth affirmative defense (other affirmative defenses reserved) (contending that "there *may be facts* justifying the pleading of additional affirmative defenses that are not currently apparent")

(Pls.' Mem. Opp. Int. Pls.' Mot. to Strike, pgs. 5-9.) (Emphases added.)

{36} The Court concludes that the foregoing defenses are speculative and not properly asserted at this time.[7] Accordingly, the Court **GRANTS** in part the Motions to Strike, and Plaintiffs' third, fifth, eighth, sixteenth, seventeenth, twenty-first, twenty-second, twenty-fourth, twenty-eighth, thirtieth, thirty-first, thirty-

---

[7] The Court notes that Plaintiffs' assertion of numerous affirmative defenses with little or no factual support can also raise concerns under Rule 11 of the North Carolina Rules of Civil Procedure. Rule 11 requires, *inter alia*, that "[e]very pleading" be "well grounded in fact" and "formed after reasonable inquiry." N.C. Gen. Stat. § 1A-1, Rule 11 (2013). "A defendant's counsel cannot, under Rule 11, simply reference all possible defenses in order to avoid waiving a defense unless he or she has conducted the inquiry required to determine that the defense is viable." *Carpenter v. Agee*, 171 N.C. App. 98, 104, 613 S.E.2d 735, 738 (2005) (Geer, J., concurring) (citing *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 97 (3d Cir. 1988), for the proposition "the practice of 'throwing in the kitchen sink' at times may be so abusive as to merit Rule 11 condemnation"); *see also Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC*, 2005 U.S. Dist. LEXIS 32299, at *24 (S.D.N.Y. Dec. 12, 2005) (dismissing affirmative defenses where party "included in their pleadings an everything-but-the-kitchen-sink list of affirmative defenses that they do not even attempt to support").

second, thirty-fourth, thirty-eighth, and forty-sixth[8] affirmative defenses are hereby **STRICKEN** without prejudice. In the event that Plaintiffs are able to develop evidence through discovery such that these defenses can be properly asserted in compliance with the North Carolina Rules of Civil Procedure, then, at that time, Plaintiffs may seek to file an amended pleading in accordance with Rule 15.

{37} Except as expressly stated above, the Motions to Strike are hereby **DENIED**.

### C. THE RAYS' MOTION TO COMPEL

{38} The Rays seek an order from this Court (1) compelling Plaintiffs to provide complete responses to Interrogatory Nos. 5, 8, 11, and 18; (2) compelling Plaintiffs to provide complete responses to Requests for Production of Documents Nos. 1, 5, 6, 7, 9, 10 and 11; (3) deeming that Request for Admissions Nos. 9, 12, 16, and 20 are admitted; (4) directing that Plaintiffs serve a privilege log identifying all documents responsive to the Rays' discovery requests that have been withheld and, in addition, specifying the author, recipient, date of creation, subject matter, and privilege asserted with respect to each document so withheld; and (5) directing that Plaintiffs bear the cost of the attorneys' fees incurred by the Rays in obtaining this Order. (Rays Mem. Supp. Mot. to Compel, pgs. 4, 22.)

{39} "Under the rules governing discovery, a party may obtain discovery concerning any unprivileged matter as long as relevant to the pending action and

---

[8] "[A] reserved right to rely on unpleaded defenses is simply not a defense of any kind, much less an affirmative one." *Koehler v. United States*, 2012 U.S. Dist. LEXIS 163816, at *4 (E.D.N.C. Nov. 15, 2012) (quoting *Palmer*, 2010 U.S. Dist. LEXIS 63265, at *19).

reasonably calculated to lead to the discovery of admissible evidence." *Wagoner v. Elkin City School Bd. of Educ.*, 113 N.C. App. 579, 585, 440 S.E.2d 119, 123 (1994) (citing N.C. Gen. Stat. § 1A-1, Rule 26(b)). "During discovery, relevance is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Mainstreet Collection, Inc. v. Kirkland's Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010) (quoting *Oppenheimer Fund. Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978)). A party's response to a written discovery request must either state that the request is permitted or raise an objection, in which case the party must articulate its basis for the objection. N.C. Gen. Stat. § 1A-1, Rule 34(b) (2013).

{40} Rule 37 of the North Carolina Rules of Civil Procedure allows for the filing of a motion to compel where a party's responses to discovery requests are "evasive or incomplete." N.C. Gen. Stat. § 1A-1, Rule 37(a)(3). "The party resisting discovery bears the burden of showing why the motion to compel should not be granted." *Smithfield Bus. Park, LLC v. SLR Int'l Corp.*, 2014 U.S. Dist. LEXIS 110535, at *7 (E.D.N.C. Aug. 11, 2014). "Specifically, the party seeking protection from the court from responding to discovery must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Id.* The decision whether a "party's motion to compel discovery should be granted or denied is within the trial court's sound discretion and will not be reversed absent an abuse of discretion." *Wagoner*, 113 N.C. App. at

585, 440 S.E.2d at 123 (citing *In re Estate of Tucci*, 104 N.C. App. 142, 152, 408 S.E.2d 859, 865-66 (1991)).

1. The Rays' Interrogatories

Interrogatory No. 5

{41} The Rays' Interrogatory No. 5 requests that Plaintiffs identify all documents that Plaintiffs reviewed and/or relied upon in responding to the Rays' interrogatories. (Rays Memo. Mot. to Compel, pg. 10.) Plaintiffs object on grounds of work product immunity, contending that compliance with the request would require Plaintiffs' counsel to reveal their mental impressions formed in connection with this litigation. Plaintiffs further object on grounds of attorney-client privilege.

{42} The party seeking protection under the work product doctrine bears the burden of showing "'(1) that the material consists of documents or tangible things, (2) which were prepared in anticipation of litigation or for trial, and (3) by or for another party or its representatives which may include   an attorney, consultant . . . or agent.'"*Isom v. Bank of Am., N.A.*, 177 N.C. App. 406, 412-13, 628 S.E.2d 458, 463 (2006) (quoting *Evans v. United Servs. Auto. Ass'n,* 142 N.C. App. 18, 29, 541 S.E.2d 782, 789 (2001)) The attorney-client privilege, on the other hand, is invoked where the party seeking its protection is able to show the following:

> (1) the relation of attorney and client existed at the time the communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a proper purpose although litigation need not be contemplated and (5) the client has not waived the privilege.

*State v. McIntosh*, 336 N.C. 517, 523-24, 444 S.E.2d 438, 442 (1994)).

{43} The Court concludes that in merely seeking identification of documents, Interrogatory No. 5 requests only factual information that is not confidential or privileged and, therefore, offends neither the work product doctrine nor the attorney-client privilege. *See, e.g., Berlinger v. Wells Fargo, N.A.*, 2012 U.S. Dist. LEXIS 26650, at *5-6 (M.D. Fla. March 1, 2012) (granting motion to compel defendant to "list any and all records, notes, but not limited to, documents reviewed and/or utilized when formulating responses to these interrogatories" – over defendant's objection predicated upon work product doctrine and attorney-client privilege – because the information sought was merely "factual information and not confidential or protected privileged information"); *see also Transcap Assocs. v. Euler Hermes Am. Credit Indem. Co.*, 2009 U.S. Dist. LEXIS 46382, at *9 (N.D. Ill. June 3, 2009) (concluding defendant's response to interrogatory was insufficient because it "did not provide any information that would enable [plaintiff] to identify the specified documents [that defendant] relied on in responding to the Interrogatories"); *Flores v. Dibenedeto*, 2013 U.S. Dist. LEXIS 145082, at *3-4 (D. Conn. Oct. 8, 2013) (granting plaintiffs' motion to compel defendants' responses to interrogatories requesting that defendants "identify all documents referred to or relied upon in responding to this interrogatory"); *Aspen Grove Owners Ass'n v. Park Promenade Apts., LLC*, 2010 U.S. Dist. LEXIS 100735, at *19 (W.D. Wash. Sept. 17, 2010) (directing plaintiff to specify the evidence relied upon in responding to defendants' interrogatory); *Cummerlander v. Patriot Preparatory Acad.*, 2014 U.S.

Dist. LEXIS 67567, at *31 (S.D. Ohio May 16, 2014) (explaining that "a plaintiff may properly use an interrogatory to request that a defendant identify documents used to support responses to requests for admission"). Plaintiffs' objection is overruled, and Plaintiffs shall supplement their responses accordingly.

Interrogatory No. 8

{44} The Rays' Interrogatory No. 8 requests information concerning Plaintiffs' "open architecture" approach in the conduct of its business through its subsidiaries, including CBD. Plaintiffs' original response to this interrogatory professed "uncertain[ty] as to the meaning of the phrase 'open architecture' given that it [was] not a term of art known to them." (Pls.' Resp. Interr. 8.) Plaintiffs amended their response after the Rays pointed out that National had extolled the benefit of its "open architecture" approach in its 2010 Form 10-K filing with the Securities and Exchange Commission. The Rays contend, however, that "Plaintiffs' Amended Answer merely parrots the little information" set forth in the Form 10-K and that Plaintiffs, therefore, should be ordered to provide a more detailed response, as the requested information pertains to the Rays' claims concerning National's control over its subsidiaries and individual brokers, such as Harry Stokes. (Rays' Mem. Supp. Mot. to Compel, pg. 11.)

{45} The Court finds this request overly broad and unduly burdensome in the context of this case. Further, as a practical matter, it appears that National's "open architecture approach" has little, if any, bearing on the question of National's control over CBM and Harry Stokes. The Court cannot, therefore, conclude that the

interrogatory is reasonably calculated to lead to the discovery of admissible evidence. *See Wagoner*, 113 N.C. App. at 585, 440 S.E.2d at 123; N.C. Gen. Stat. § 1A-1, 26(b)(1) (2013). Accordingly, the Court denies the Rays' motion to the extent that it seeks to compel further response to Interrogatory No. 8.

Interrogatory Nos. 11 and 18

{46} Interrogatory No. 11 requests that Plaintiffs identify all documents concerning National's strategies with respect to its management and oversight of "independent financial services products distribution businesses"[9] that it acquired from 2005 through 2013; it also requests that Plaintiffs identify any documents concerning National's supervision of securities brokers that are registered through NFPSI and that operate within the financial services firms acquired by National. Similarly, Interrogatory No. 18 requests that Plaintiffs identify all policies, manuals, or memoranda governing the oversight of Harry Stokes, CBM and other managers of such acquired businesses.

{47} Plaintiffs point out that they have produced the Management and Merger Agreements and insist that, aside from those agreements, National has no duty to supervise its subsidiaries, independent contractors, or "principals" of its independent contractors.[10] Additionally, Plaintiffs vehemently contend that documents currently in NFPSI's possession are not discoverable, as NFPSI is not a

---

[9] National uses this term – "independent financial services products distribution businesses" – in its Form 10-K to describe the firms that it acquires under its "acquisition structure."

[10] CBM was an independent contractor of National; Harry Stokes was a "principal" of CBM.

party to this action and no evidence has been produced to link NFPSI to the BlackBurg investments.

{48} The Court finds that the information requested in Interrogatory Nos. 11 and 18 constitutes information that is central to the Rays' claims and theory of recovery concerning the degree of control exercised by Plaintiffs over Harry Stokes and CBM. Moreover, the production of National's "Producer Market Conduct Guide" indicates that the Management and Merger Agreements are not the only existing documents that pertain to National's oversight of Harry Stokes and CBM (or at least of persons with Stokes' job title and position). Accordingly, the Court directs Plaintiffs to supplement their answers to Interrogatory Nos. 11 and 18 to identify all such responsive documents after making reasonable inquiry as required under Rule 26(g).

### The NFPSI Documents

{49} The North Carolina Rules of Civil Procedure are, for the most part, verbatim recitations of the federal rules." *Turner v. Duke Univ.*, 325 N.C. 152, 164, 381 S.E.2d 706, 713 (1989) (citing *Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970)). "Decisions under the federal rules are thus pertinent for guidance and enlightenment in developing the philosophy of the North Carolina rules." *Id.* Analogous to Rule 34 of the North Carolina Rules of Civil Procedure, Rule 34 of the Federal Rules of Civil Procedure requires a party to produce documents that are "in the possession, custody or *control* of the party upon whom the request is served . . . ." Fed. R. Civ. P. 34(a)(1) (emphasis added). "[A] litigating parent corporation has

control over documents in the physical possession of its subsidiary corporation where the subsidiary is wholly owned or controlled by the parent." *American Angus Ass'n v. Sysco Corp.*, 158 F.R.D. 372, 375 (W.D.N.C. 1994) (citing *Camden Iron & Metal, Inc. v. Marubeni America Corp.*, 138 F.R.D. 438, 441 (D.N.J. 1991)). Factors to be considered in determining whether a parent has "control" of its subsidiary include the following:

> (a) commonality of ownership, (b) exchange or intermingling of directors, officers or employees of the two corporations, (c) exchange of documents between the corporations in the ordinary course of business, (d) any benefit or involvement by the non-party corporation in the transaction, and (e) involvement of the non-party corporation in the litigation.

*Uniden Am. Corp. v. Ericsson Inc.*, 181 F.R.D. 302, 306 (M.D.N.C. 1998).

{50} Here, NFPSI is a wholly-owned subsidiary of National. Under *American Angus Ass'n*, this fact, in and of itself, would appear to be dispositive in requiring National to produce any relevant documents presently in NFPSI's possession. Regardless, the same result is achieved through application of the multi-factor approach set forth in *Uniden*: commonality of ownership weighs in favor of production, as does the fact that National and NFPSI share several of the same officers and directors – namely, Douglas W. Hammond (Chairman and Chief Executive Officer of National; Chairman and Director of NFPSI; Mark Grosvenor (Senior Vice President and Chief Technology Officer of National; Senior Vice President Technology of NFPSI); Anne Long (Senior Vice President and President, NFP Life, of National; Director of NFPSI); and James L. Poer (Senior Vice President and President, Advisor Services of National; President, Board of Directors

of NFPSI).  (Rays' Resp. to Pls.' Supp. Mem., Exh. 1-2).  Further, and although somewhat removed from the *res gestae* of the "transaction" in question – that is, the Ponzi scheme and the BlackBurg investments solicited by Harry Stokes in furtherance thereof – it does appear, as the Rays point out, that NFPSI may have relevant documents to this dispute since a provision in the Management Agreement required Mr. Stokes to conduct his securities transactions through NFPSI.  Thus, notwithstanding the fact that NFPSI is not a party to this litigation, the totality of the circumstances lead the Court to conclude that the Rays have met their burden of showing that National "controls" NFPSI for purposes of the present analysis and may possess relevant documents that could lead to the discovery of admissible evidence.  Plaintiffs' objection that documents in NFPSI's possession are not discoverable is, therefore, overruled, and Plaintiffs shall supplement their responses accordingly.

2. <u>The Rays' Requests for Production of Documents ("RFP")</u>

<u>RFP No. 1</u>

{51}  RFP No. 1 seeks any documents that have not already been produced that, by virtue of this Order, Plaintiffs have been directed to identify in supplementing their responses to the Interrogatories addressed above.  The Court sustains Plaintiffs' objection to this request to the extent that compliance therewith would require Plaintiffs to produce privileged documents.[11]  Plaintiffs' objection is otherwise overruled, and Plaintiffs shall supplement their responses accordingly.

---

[11] Although the Court has directed Plaintiffs to identify all documents reviewed and/or relied upon in formulating their responses to the Rays' Interrogatories, *supra*, Plaintiffs shall not be required to

RFP No. 5

{52} RFP No. 5 seeks statements reflecting management fees paid to CBM and/or Harry Stokes from July 2006 through 2013. Plaintiffs represent that Plaintiffs have produced all such statements pertaining to CBM and that Plaintiffs have no such statements pertaining to Harry Stokes, as Plaintiffs did not pay management fees to Harry Stokes. Accordingly, the Court directs that Plaintiffs produce any such documents still in Plaintiffs' possession or, alternatively, amend their response to indicate that no such documents exist that have not already been produced.

RFP No. 6

{53} RFP No. 6 seeks all policies, manuals, memoranda, and guidance documents concerning oversight of managers of financial services firms acquired by National. Plaintiffs have produced the Merger and Management Agreements, which Plaintiffs represent constitute the only such documents in their possession. Plaintiffs also produced but then withheld the Producer Market Conduct Guide, which Plaintiffs contend is inapplicable to CBD, CBM, or Harry Stokes and, therefore, not germane to RFP No. 6. The Court concludes that the Producer Market Conduct Guide and similar documents, including those pertaining to NFPSI and/or in NFPSI's possession, are discoverable and must be produced. Accordingly, Plaintiffs' objections to this request are overruled, and Plaintiffs shall produce any policies, manuals, memoranda, and guidance documents that are responsive to this

produce any documents so identified to the extent such documents are protected under the work product doctrine or the attorney-client privilege (or any other applicable privilege).

request, or alternatively, shall amend their response to indicate that no such documents exist that have not already been produced.

RFP No. 7

{54} Similar to RFP No. 6, RFP No. 7 seeks policies, manuals, memoranda, and guidance documents concerning oversight of brokers that are registered through NFPSI and that operate within the financial services firms acquired by National. Plaintiffs' objections to this request are overruled for the reasons stated above in connection with Interrogatory Nos. 11 and 18 and RFP No. 6, and Plaintiffs shall supplement their responses accordingly.

RFP Nos. 9 and 11

{55} RFP Nos. 9 and 11 seek any intra-office or inter-office communications concerning Harry Stokes' investment activities and oversight of Harry Stokes and CBM from July 2006 through the present, respectively. Plaintiffs object that, aside from documents concerning the BlackBurg investments, the requested documents are not relevant to this action and, moreover, would require disclosure of information protected by privacy laws and information that constitutes Plaintiffs' trade secrets and proprietary information.

{56} The Court finds this request to be within the scope of Rule 26(b)(1), as office communications concerning oversight of Harry Stokes and/or his investment activities – pertaining to BlackBurg or otherwise – during the specified time period would be probative of the degree to which Plaintiffs exercised oversight over Harry Stokes, and, therefore, could lead to discovery of admissible evidence relating to the

Rays' claims. Plaintiffs' objection to this request for production is, therefore, overruled, and Plaintiffs shall supplement their responses accordingly.[12]

RFP No. 10

{57} RFP No. 10 seeks any investigative reports or findings concerning the conduct of Harry Stokes and/or CBM. Plaintiffs object that any reports not pertaining to the BlackBurg investments are irrelevant and, to the extent conducted in contemplation of this action, are protected from discovery under the work product doctrine and attorney-client privilege.

{58} Plaintiffs' counsel indicated at the September 10, 2014 hearing that a forensic investigation had been performed on Harry Stokes' computer or computers. Additionally, National's Audit Report of CBD, dated January 25, 2013, states that "inconsistences were noted" in the tax returns of Harry Stokes and CBM and that "[c]orporate audit plans on reviewing these revised tax returns [as filed by Harry Stokes] as part of a future audit." (Audit Report, pg. 1.) The Court, therefore, overrules Plaintiffs' objection and orders Plaintiffs to produce any reports performed as a result of the Audit Report and any forensic or other investigations conducted relating to Harry Stokes and/or CBM.

### 3. Request for Admissions ("RFAs")

{59} The Rays take issue with Plaintiffs' responses and objections to RFAs Nos. 9, 12, 16, and 20, contending that Plaintiffs' recalcitrance has precluded stipulation of matters that, in the Rays' view, must be readily conceded in light of the

---

[12] With respect to Plaintiffs' privacy concerns, the Court notes that the May 15, 2014 Consent Protective Order remains in effect.

undisputed facts of record. The Rays, therefore, request that the Court (1) find that Plaintiffs' responses and objections are insufficient and violative of Rule 36; and (2) deem admitted the matters raised in the subject RFAs.

{60} "'Litigants in this state are required to respond to pleadings, interrogatories and requests for admission with timely, good faith answers.'" *Taidoc Tech. Corp. v. OK Biotech Co., Ltd.*, 2014 NCBC 48 ¶ 32 (N.C. Super. Ct. Oct. 9, 2014), www.ncbusinesscourt.net/opinions/2014_NCBC_48.pdf (quoting *WXQR Marine Broad. Corp. v. JAI, Inc.,* 83 N.C. App. 520, 521, 350 S.E.2d 912, 913 (1986)). Rule 36 of the North Carolina Rules of Civil Procedure provides, in pertinent part, as follows:

> The party who has requested the admissions may move to determine the sufficiency of the answers or objections. Unless the court determines that an objection is justified, it shall order that an answer be served. If the court determines that an answer does not comply with the requirements of this rule, it may order either that the matter is admitted or that an amended answer be served. The court may, in lieu of these orders, determine that final disposition of the request be made at a pretrial conference or at a designated time prior to trial.

N.C. Gen. Stat. § 1A-1, Rule 36(a) (2013). "'Rule 36 serves two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be.'" *Excel Staffing Serv. v. HP Reidsville, Inc.,* 172 N.C. App. 281, 284-85, 616 S.E.2d 349, 352 (2005) (quoting N.C. Gen. Stat. § 1A-1, Rule 36 official commentary).

{61} Here, the Court concludes that at this relatively early stage of the proceedings, it would be inappropriate to deem admitted the RFAs in

question. If the Rays are able to prove facts that Plaintiffs have denied, the Rays will, at that time, have recourse and be entitled to seek relief under Rule 36, Rule 37, and Rule 11, as appropriate. The Court, therefore, denies at this time the Rays' motion to the extent that it seeks to compel further response to RFAs Nos. 9, 12, 16, and 20 without prejudice to the Rays' right to renew this Motion or seek alternative relief at a later stage of the case.

### 4. Privilege Log

{62} Plaintiffs have indicated that, after unintentional delay, Plaintiffs have served their privilege log on the Rays in fulfillment of Plaintiffs' discovery obligations. (Pls.' Mem. Opp. Int. Pls.' Mot. to Compel, pg. 2.) Within thirty (30) days of the entry of this Order, Plaintiffs shall serve an updated privilege log with any additions to the privilege log necessitated by virtue of this Order.

### 5. Attorneys' Fees

{63} The Rays seek, in the final sentence of their Memorandum of Law in Support of Motion to Compel, an award of reasonable attorneys' fees incurred in obtaining this Order. (Rays' Mem. Supp. Mot. to Compel, pg. 22.) Plaintiffs do not counter with any argument in opposition to the Rays' request for attorneys' fees, aside from a blanket request that the Court deny the Rays' Motion to Compel in its entirety. (Pls.' Mem. Opp. Int. Pls.' Mot. to Compel, pg. 14.)

{64} Rule 37 of the North Carolina Rules of Civil Procedure provides, in pertinent part, as follows:

> If the motion [to compel] is granted, the court shall, after opportunity
> for hearing, require the party or deponent whose conduct necessitated

the motion or the party advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

N.C. Gen. Stat. § 1A-1, Rule 37(a)(4) (2013).

{65} The Court concludes that Plaintiffs' opposition to the Rays' Motion to Compel was substantially justified and that, at this stage of the proceedings, an award of expenses, including attorneys' fees, would be unjust and thus not appropriate. Accordingly, the Court **DENIES** the Rays' request for attorneys' fees, without prejudice to the Rays' right to renew such request, should an issue arise concerning compliance with this Order as discovery proceeds.

III.

CONCLUSION

{66} For the foregoing reasons, the Rays' Motion to Dismiss is **GRANTED**; the Rays' Motion to Strike is **GRANTED** in part and **DENIED** in part; Intervenor Plaintiffs' Motions to Strike are **GRANTED** in part and **DENIED** in part; the Rays' Motion to Compel is **GRANTED** in part and **DENIED** in part; and within thirty (30) days of the entry of this Order, Plaintiffs shall serve an updated privilege log with any additions to the privilege log necessitated by virtue of this Order.

**SO ORDERED**, this the 13th day of October, 2014.